exHibit

B

**UNITED STATES DISTRICT COURT FOR THE STATE OF UTAH: Central Division**

**Jurisdiction:**

The jurisdiction of this court to hear these actions is based upon 42 U.S.C. § 2000-5(f)(3) and, when the discrimination is based on age, 29 U.S.C. 626(c)(1).

**Parties:**

Mr. Zach Rusk

50 S 500 W

Salt Lake City, UT 84101

**Plaintiff,**

**v.**

**Fidelity Brokerage Services (FBS)**

49 N 400 W

Salt Lake City, UT 84101

      AFK - American Fork Building / Site / Location

      GTW - Gateway Building / Site / Location

*Defendants:*
Stacey Schmidt, Associate General Council for Discrimination; Jewel Ellis, HR Director; Andrea Jung, HR VP; Ellen Riggi, Senior Accomodations Specialist/Approver; Charity Swanson, Director SVC; Don Montgomery, Director HNW; Jeff Newbold, Director; Hayley Curtis, Director; Jeff Porter, Manager; Curtis Dudley, Manager; Greg Proctor, Manager; Mark Fenton, Supervisor; Melinda Nelson, Supervisor; Troy Koon, Supervisor; Adam, Supervisor; Cory Fillmore, Manager (Licensing and Registration and later SVC); Budd Black, Manager (T&D and later SVC Manager); Mitchell Stout, Manager (T&D); Chris Colgan, Compliance Director; Karen Rider, Manager (RET); Kevin Goff, Manager (RET); Mark Gines, Manager; Nikki Gore, Manager (Annuities); Wesley Odekirk, Manager (Annuities); Lance Frival, Manager (HNW); Laurie Ann Thor, Manager (ER); Jay Ball, Manager (ER); Karen Tenney, Manager (ER), Scott Buchanan, Manager (ER); Greg Gallagher, Manager/Director (HNW); David Stephansen,

Manager (HNW); Timothy Neath, Manager (SDB/HSA); Alex Castillo, Manager (SDB/HSA); Matt Webber, Manager (SVC); Darrin Farr, Manager (SVC); Zan Hughes, Manager SLC IC; Tad Harris, IC RPC; Tyler Kerby, Supervisor; Garret Johnson, Supervisor; John Klindt, Supervisor; Jimmy M Florio, Systems Analyst; Rasheed Abdullah (Technology); Sarah Metcalf (AA); Gina Acker (AA); Gary E. Stevens,Vice President, Chief Ethics Officer PWI Risk and Compliance, Theresa Andes (Compliance Office), Jenny Spitzmueller (Ethics Office), Jessica Demill, Supervisor; Aaron Fox, HD/Supervisors Manager; George Yzejian, Operations; Brent Nelson, SFS/Processing Specialist (Ops); Max Brown, Supervisor;

***Relavant Management Overview:***

2013 - Kris Liacopoulos, GM GTW/AFK; SVC Directors: Don Montgomery, Charity Swanson; Director T&D, Hailey Curtis; T&D Manager, Mitchell Stout; T&D Specialist, Budd Black; Licensing and Registration manager: Cory Filmore; SVC Managers: Matt Webber, Greg Proctor;

2014 - Kris Liacopoulos, GM GTW/AFK; SVC Directors Charity Swanson, (Todd - ''secret seven'' pilot - for about a month - Todd was said to have left to Schuab just after making director and replacing Don Montgomery who moved to direct HNW), Managers: Greg Proctor, Curtis Dudley, Jeff Porter,  SVC Supervisors: Melinda Nelson,  Tyler Kerby, Garret Johnson, Darren Farr, Budd Black (supervisor, later manager);

2015 - Kris Liacopoulos, GM GTW/AFK, SVC Director Charity Swanson; Manager: Jeff Porter, supervisors Mark Fenton; Max Brown;

## Nature of the Case:

### (Disability, Religion, FMLA, ADA, Discrimination, Retaliation)

Plaintiff contends that FBS officials discriminated against him by passing over him for promotions, around twelve different times, around eight various roles, because of his disability and religion. Plaintiff further asserts that this occurred throughout his time at FBS where he was not provided ADA requests, Sundays off, certain schedule adjustments, and that FBS retaliated against him for filing an EEOC claim about such discrimination. Plaintiff claims that FBS created a hostile working environment for him, caused him to suffer major depression, anxiety, failed to provide reasonable accommodation, punished him for using medical leave to obtain treatment for work induced maladies, and finally, terminated his employment when the discrimination / retaliation caused him incapacity.

## Cause of Action:

**Applications, interviews, selecting officials - non-promotions:**

Managment stated that if reps like Mr. Rusk don't move on within six months, they burn out and leave, and/or are seen as stagnant which affects their growth. Mr. Rusk was in that role for four times that - two years. Mr. Rusk continued to apply for other roles. Mr. Rusk was rejected from

them on over eight occurrences. There is reason to believe the selecting officials who do not have ADA qualified disabilities, and are LDS, prefer to hire candidates who do not have ADA qualified disabilities and who are LDS. Mr. Rusk is non-LDS and has an ADA qualified disability.

Mr. Rusk applied and interviewed for FBS roles for which he was qualified, on or around twelve different occurrences between 2013-2015. These include, three times to HNW - High Net Worth, there times to RET - Retirements, once to ER - Electronic Response, once to Annuities, once to SBD/HSA (as encouraged through email communications from Mr Rusk's manager at the time, Jeff Porter),  once to the FBS Salt Lake City Investor Center (as a Financial Rep/Investments Rep), once to FFAS  - Fidelity Financial Advisor Solutions in Rhode Island,  once to a tech role out of Durham, NC. Mr. Rusk was rejected from every one of those roles.

### 12 Counts

*(In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended)*

### 12 Counts

*(In violation of the Title VII of the Civil Rights Act of 1964, as amended)*

Early 2015 - Zan Hughes, Manager IC, Tad Harris, IC RPC - IC FR/IR application and interview.

November 2014 - Health Savings Account and Self Directed Brokerage - Timothy Neath, Manager, Alex Castillo, Manager

November 2014- High Net Worth - Greg Gallagher, Manager, David Stephansen, Manager, Director Don Montgomery

September 2014 - Electronic Response - Managers - Laurie Ann Thor, Jay Ball, Karen Tenney, Scott Buchanan - Director Hayley Curtis

September 2014 - Annuity Services - Managers - Mark Gines, Nikki Gore, Wesley Odekirk

September 2014 -  Retirements - Managers - Kevin Goff, Karen Rider

Mid 2014 - application to roles in North Carolina/Tech, FFAS - Rhode Island, DC (Investor Center)

March 2014 - Retirements role - Managers - Karen Rider, Kevin Goff,

December 2013 - High Net Worth - Managers - Lance Frival, David Stephansen

*Names of promoted include:*

Michael Christiansen HNW (new hire group 2011 E*Trade, 2013 FBS, team member on Greg Proctor/Curtis Dudley's team), William (new hire group 2013) - RET, Scott (new hire group 2013) - HNW (TX), Steven Daniels (team member on Jeff Porter's team, noted to be a former ML VP) - HNW, Cash Wright (team member on Jeff Porter's team), Taylor Jones (team member on Jeff Porter's team), Cody Wiseman - AZ IC (same new hire class 2013), Danielle Degrief - AZ IC (same new hire class 2013), Stephanie Gordon (noted to be a former GS/MS SVP, close with operations manager George Yzejian, team-ember on Jeff Porters Team), Paul Hogge (same new hire class 2013, Team member on Curtis Dudley's team), Chanel Clepper (same new hire class 2013, team member on Curtis Dudley's team - her mother worked with Fidelity in ER), Kevin Michels (left the firm before Mr. Rusk was terminated), Colman Spalding (left the firm before Mr. Rusk was terminated), Kennedy Palmer (team member on Greg Proctor's and Curtis Dudley's team - mother also worked at Fidelity - SLC IC/HNW/PCG (Private Client Group), etc. Nan Parker was an AE / VP in the FBS SLC IC, she left to AZ, but had in her book of business, Mr. Rusk's family.  Ms. Parker emailed and spoke with Mr. Rusk on his cell phone before Mr. Rusk's termination.

November 2012 to January 2013: FBS conducts interviews with candidates. FBS requires pre-testing that can be seen as not relevant to the job as a weeding out tool.

## One Count

*(In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended)*

February 2013 - accommodations requested - not granted: FBS offers Mr. Rusk the job. Mr. Rusk stated to HR that he has an ADA qualified disability and asked if HR needs any documentation. HR said no. Mr. Rusk requested accommodations, accommodations denied. This included *obtaining exclusive study materials early*, *time and a half time, as well as a separate monitored room for study and testing.* Mr. Rusk spent money on his own *study materials* two months before starting at Fidelity, since FBS would not provide those up front as an accommodation.

## One Count

*(In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended)*

April 2013 - accommodations requested - not granted. Emails to management / training and development team. The majority of the time, the above requested accommodations were not granted. There was not enough time in a day for Mr. Rusk to study without accommodations as much as everyone else and back to back testing, along with getting any more than four hours of sleep. Mr. Rusk was expected to test the same time, and finish the course the same time. A separate monitored room free of distractions for the required study inside the company grounds, was also not secured and granted majority of the time. Without these accommodations, Mr. Rusk failed tests before. Mr. Rusk had to use a few vacation days to catchup studies to barely get by, sleep deprived. Fortunately, Mr. Rusk passed the test with one of the top scores in the class for the most rigorous examination. This occurred for both examinations and respective study.

## Two Counts

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

2014: Mr. Rusk requested Sundays off to attend church - request denied.

## One Count

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

2014-2015: Mr. Rusk is 6'5" and has a full thoracic spinal fusion due to scoliosis (for which FBS was aware of through being provided with X-rays via email, with Mr. Rusk's name, etc., on them). Mr. Rusk requested a higher desk and chair. FBS was slow to grant this accommodation for Mr. Rusk. Mr. Rusk was required to work 7am-6pm. Mr. Rusk went to an emergency room doctor to obtain a pain medication and the doctor gave Mr. Rusk a slip with an order to take off a few days of work. This was provided to FBS in an email. Mr. Rusk's GP had Mr. Rusk get a CT scan of his back. The GP stated that Mr. Rusk has bulging disks and shifting after surgery.

## One Count

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

Mr. Rusk requested 8am-5pm or 9am-6pm shift vs. a 7am-6pm. Eight hour shifts were granted with FMLA filled out by Mr. Rusk's PT but the shift was from 7am-4pm. Mr. Rusk was told that he could use sick time to attend PT sessions until until FMLA forms were submitted. Mr. Rusk was told that FBS would retroactively adjust sick time to be FMLA time, once FMLA forms

were submitted and approved, even before accruing and using some sick time. When FMLA was granted, sick time was not retroactively adjusted.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**

*Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.*

In or around early 2015, Mr. Rusk was told in an email by the accommodations approver for FBS titled ''ADA Request'', to have his GP, or someone who has a history of knowing well about Mr. Rusk's ADA qualified disability, to fill out the forms and then return them. The forms were labeled FMLA as well. Mr. Rusk scheduled an appt with Mr. Rusk's GP and requested this of him (Mr. Rusk's GP's practice has two doctors - a woman and a man, who have treated him and his family since around 1998). The GP said he is not a specialist for this and thus, will not fill out the forms. Mr. Rusk told FBS this in writing as well, and provided FBS management/HR his name/ practice, as well as for the specialist in Utah for Mr. Rusk's ADA qualified disability, who Mr. Rusk had not seen for years. Mr. Rusk then had to schedule an appt with the specialist who said she is the only specialist in Utah for Mr. Rusk's ADA qualified disability on a blocked phone call from her to Mr. Rusk's cell phone. Mr. Rusk said that he just needed those forms filled out per the request of his employer, to receive accommodations (she had filled these out in the past), but she said she will only fill them out if Mr. Rusk starts taking a specific medication, which costs 1k/month without insurance, and only if Mr. Rusk takes it before a scheduled appt that she called 're-establishing'. To fill out the paperwork, she also required Mr. Rusk to agree to having his abusive father to be present at the appt. She would not budge on these requirements of hers, so Mr. Rusk had to file a complaint with the healthcare online system. Fidelity was aware, in writing, of the scheduled appt date of April 27th, but fired Mr. Rusk on April 23rd (per CRD and unemployment claim), effective immediately, after Mr. Rusk came into the office. FBS was aware of this appt date through email communications. FBS later put on a different form the termination date of April 27th which was not correct.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**
*Reprisal for Engaging in Protected Activities*

**One Count**
*Hostile and Abusive Working Environment*

2014: One role Mr. Rusk applied for and was rejected from can be seen as an accommodation not granted for claims made by FBS in the FBS statement of position. This is called electronic response.

## One Count

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

## One Count
*Reprisal for Engaging in Protected Activities*

Spring 2015:

FBS was served with a charge of discrimination from the EEOC. Mr. Rusk was then put on a written warning after Mr. Rusk received a document that stated that Mr. Rusk had to achieve an overall CEI score of 66%, top box, by a certain date. A former teammate who was promoted at the same time Mr. Rusk was not for the same role (HNW) stated:

Friday, March 20, 2015 8:53 PM - Quote from Steven Daniels, HNW rep:
"CEI is a tricky number. Some months there is absolutely nothing you can do. This month, the consistent CEI leader on my team, somehow is in the 60% range this month.

Tax time is especially difficult because the score you get can be based solely on amount of TIME the client held before speaking with you. Sometimes you just get the calls that you cannot win with, meaning, the client already had a significant issue prior to speaking with you. "

## One Count

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

## One Count
*Reprisal for Engaging in Protected Activities*

FBS said that Mr. Rusk would no longer be getting his Q2 bonus payout.

## One Count
*Reprisal for Engaging in Protected Activities*

From: Christiansen, Michael
Sent: Thursday, April 09, 2015 2:05 PM
To: Rusk, Zachary
Subject: RE:

''I would be happy to be a witness if needed."

Apr 22, 201512:15:23 Daniels, Steven - Hey! Are you still applying for other positions? Or are you in a holding off for now?
12:16:24 Rusk, Zachary - I've been put on corrective action, dont get to apply for anything as of yesterday, just after fmla was approved and the charge was moved to the docket. also told i dont get q2 bonus

12:16:37 Rusk, Zachary - how ya been?
12:16:50 Daniels, Steven - Well crud.
12:17:00 Daniels, Steven - Been good. Can't complain

Steven Daniels was hired to HNW in one of the same rounds Mr. Rusk applied and interviewed for but was once again, not hired. Steven Daniels was on Mr. Rusk's team with Jeff Porter.

Stacey Schmidt, Associate General Council for Discrimination, asked Mr. Rusk in an internal email what Mr. Rusk is hiding. Mr. Rusk responded with the fact that Mr. Rusk has nothing to hide and that there is a camera above Mr. Rusk's desk and that Mr. Rusk looks over his shoulder as a 'tic' per his diagnosis of Tourette Syndrome (ADA Qualified disorder - movement disorder) and that her asking that can be seen as discrimination toward Mr. Rusk's ADA qualified disability.

### One Count

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

### One Count
*Reprisal for Engaging in Protected Activities*

Conversation started Mey u

**Megan Ostergaard Cross**
Dude. Where the hell did you go???


**Zach Rusk**
May be able to talk about it in several months if I'm still alive. Ha. How have you been?

**Megan Ostergaard Cross**
Good! Super sad u left. I got on HNW

But no matter what dept u r in it still is a call center

Did u get another job?

Megan Ostergaard Cross (sat right next to Mr. Rusk on Jeff Porters team 2015):

Facebook Message:

Megan Ostergaard Cross
''Dude. Where the hell did you go???"

''I got on HNW"
''u are young with a great resume."
''U are charismatic. Too charismatic for fido"
''It's all in having a genuine interest in others. And that u do well and naturally!"
''I can't get over this. I had a feeling you were fired. I am LDS tho not active."
5/13, 6:48am
Megan Ostergaard Cross
''I know the issue with James has been on going for a while. Someone above him doesn't sit easy with the fact that he used to be a bishop. It's hard at fidelity. Because you have upper management that come in from across the country who aren't LDS or even familiar with it and then u have a mix of LDS and non LDS employees. Everyone is getting rubbed the wrong way. then you have upper management who are openly gay it's just really a tough situation. So Jeff asked you if you were LDS? Was it just an honest question? Being curious since you are young and a SLC native? Everyone here thinks that if you are a young native SLC native with their head on straight then you must be LDS."

To: **Brady**                                                                        Details

Message with a(801) 706-6517
Yesterday, 12:36 AM

## This is Brady Sutherland

Yesterday, 1:50 AM

## What are you doing?

2015: Mr. Rusk received texts from a manager (documented) that was in the form of sexual harassment and making advances on Mr. Rusk. This manager, Brady Southerland, was a manager of a department for which Mr. Rusk applied, and was rejected from.

Brady Sutherland 1 (801) 360-6537 - Fidelity Investments - FBS - Annuity Services Manager: texting Mr. Rusk 435-901-8064.

May 29th - May 30th, 2015.

Brady Sutherland - Fidelity Investments - FBS - Annuity Services Manager:

''This is Brady Sutherland. Come here? 236 Jk You can cuddle with me. Lol. Hk''

''Are you home? In bed? Do you sleep in your underwear? What are you Wearing? Do you like to cuddle? do you have a pic for your profile on my phone? I'd like to cuddle right now. Hahaha''

''Hello! What's up? Just sitting here in my underwear lol I should probably do something''

2015: An individual named Dan Inouye, who works in the same department as the doctor/specialist with whom FBS knew Mr. Rusk has a scheduled appt with to fill out the FMLA paperwork days after Mr. Rusk was terminated, came to Mr. Rusk's apartment and said that he is friends with Mr. Sutherland. Dan said that he felt rejected and essentially told people that Mr. Rusk physically threatened him when Mr. Rusk certainly did not.

**One Count**
*Reprisal for Engaging in Protected Activities*

**One Count**
*Hostile and Abusive Working Environment*

There are forms generated when someone enters or exits a firm in the industry. On Mr. Rusk's exit form (CRD), FBS stated that Mr. Rusk had unprofessional communications with peers. On applications for re- employment, Mr. Rusk has been told that he is being passed by due to the CRD information.

**One Count**
*Reprisal for Engaging in Protected Activities*

Before termination (April 23rd), Mr. Rusk was planning to have a surgery in early May to fix moderate obstructive sleep apnea (where the CPAP was intolerable because it created moderate central sleep apneas per documented CPAP data). The surgery became delayed to June, but was had and did fix the sleep apnea (documented). Managment was aware of this planned surgery for which they required FMLA paperwork to be filled out, but terminated Mr. Rusk just before the appointment to schedule the surgery (after they were aware that Mr. Rusk had a pre-authorization and coverage already approved). FBS has offered short term disability pay for many others for these leaves of absences (including knee surgeries for a guy name Jeff on Mr. Rusk's team with Greg Proctor/Curtis Dudley, as well as Jessica Demill for her maternity leave) and Mr. Rusk could have had the same if they did not terminate Mr. Rusk just before. In early 2015, Ellen Riggie, senior accommodations specialist for FBS, sent Mr. Rusk an email and said that if the

recovery lasts longer than the FMLA time allocated, they can look into making an ADA accommodation for that and included an attachment that laid that out.

### One Count
*Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.*

### One Count
*Reprisal for Engaging in Protected Activities*

2013 April - Cory Filmore, Licensing and Registration Manager working closely with T&D Manager Mitchell Stout, told Mr. Rusk to email him sealed legal documents so that he could review for the ''U4'' / licensing and registration. Mr. Filmore became manager of SVC, with Jeff Porter, Darrin Farr, Budd Black, etc., in late 2014/early 2015. Mr. Porter had Mr. Filmore provide feedback on Mr. Rusk. This was Mr. Rusk's worst review before termination.

### One Count

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

****(Previous Lawsuits and Administrative Relief: Christensen v. Rusk)****

Greg Proctor - manager SVC: Q4 2013 - Q2 2014. Mr. Rusk received EIA - Excellence in Action award in Q4 2013. Mr. Proctor asked Mr. Rusk if Mr. Rusk was LDS.  Declined performance reviews - Q1 2014 - Q2 2014. HNW interviewing managers, including Lance Frivel, said Mr. Proctor did not recommend Mr. Rusk so they could not consider Mr. Rusk. Q1 2014 -Q3 2014 Objective metrics were interfered with (emails and coaching notes regarding Darren Farr, supervisor / HD in 2014, became manager in late 2014/early 2015 - on recorded calls with Darren Farr (around early to mid 2014) - Mr. Farr said to Mr. Rusk - don't ask questions and just do it - Melinda Nelson, Supervisor (HD), who Mr. Rusk sat right next to, said Mr. Farr is incorrect, while she listened to Mr. Rusk speaking with Mr. Farr which has resulted in HD call backs, decreased schedule efficiency, increased average handle time, decreased inbound efficiency, increased wrap time, increased trading errors, increased rejected distribution requests and thus decreased performance reviews on Mr. Rusk for which he was penalized for, quarterly and annually. Mr. Rusk entered this information in coaching notes, as well as in an emails to Greg Proctor, Curtis Dudley, Jeff Porter, Charity Swanson, Jewel Ellis, Andrea Jung). Mr. Rusk received MVP Recognitions in Q4 2013 and going forward as well.

### Two Counts

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

### Two Counts

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**Two Counts**

*Hostile and Abusive Working Environment*


Curtis Dudley, Manager: Q2 2014 - Q3 2014 - Mr. Rusk received MVP Recognitions.   Curtis Dudley told Mr. Rusk to speak with HR about ADA, accommodation requests, and about Mr. Rusk being asked if he was LDS by management. Curtis Dudley handed Mr. Rusk a piece of paper with a phone number for Jewel Ellis and told Mr. Rusk to get off the phone calls with clients, go into a huddle room in the AFK UT site, and contact Jewel Ellis; HR Director for FBS back east / Ellen Riggi, Senior Accomodations Specialist / Approver.

**Two Counts**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**Two Counts**

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**Two Counts**

*Hostile and Abusive Working Environment*

Q2 2014 - Q3 2014  - Mr. Rusk was called ''Zachybaby'' in a group IM chat from a supervisor.

2014 Q4 - Q1 2015 - Mr. Rusk received MVP Recognitions. Andrea Jung, HR VP, became involved. Jewel Ellis escalated issues to Andrea Jung and said she is not sure about some things and that she is waiting on information in an internal follow up email. Performance reviews declined.

Jeff Porter - Q4 2014, Q1 2015, Q2 2015

Mr. Rusk was moved to Jeff Porters team in the SLC GTW Utah site, from the AFK Utah site. Performance reviews continued to decline from Jeff Porter. Objective metrics were interfered with (emails with Jeff Porter) - including trading leads, for which Mr. Rusk was penalized for in performance reviews and thus, bonuses, which can also affect promotion eligibility.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**One Count**

*Reprisal for Engaging in Protected Activities*

**One Count**

*Hostile and Abusive Working Environment*

**From:** Rusk, Zachary
**Sent:** Thursday, February 12, 2015 12:16 PM
**To:** Porter, Jeff (SLC)
**Cc:** Ellis, Jewel; Jung, Andrea; Rusk, Zachary
**Subject:** RE: Trading Lead

''Where does it say I did not mark it as new money and/or didn't include in the note that the client hasn't traded more than 36 times or more outside or will be trading 36 times or more here? These have been acceptable before. What changed?''

''Can you tell me why it took this long for you to respond to this?''
**From:** Mr. Rusk Rusk <zach.rusk@icloud.com>

**Date:** April 19, 2015 at 3:01:59 PM MDT
**To:** Jeff Porter <Jeff.Porter.SLC@FMR.COM>
**Cc:** Jewel Ellis <Jewel.Ellis@fmr.com>, Andrea Jung <Andrea.Jung@FMR.COM>, Zachary Rusk <zachary.rusk@fmr.com>

''You have communicated that the new scoring model you have for SVC now includes weighting with NCH [Number of calls handled], that of what I was a leader of before I was incurred costs from Fidelity as it pertains to the delayed receipt of accommodations, which no longer allow me to do that kind of OT like I could have if I had received accommodations far more promptly.''

''Even while I have had many MVP recognitions, including EIA, I continue to experience non-promotion based on discrimination and retaliation as I'm not Mormon (and I was asked if I was LDS/Mormon by Managment who are LDS/Mormon) and I have a disclosed ADA qualified disability. Fidelity disables me on all counts.''

''I've been here in this weeding out role for two years and it's noted that people get burnt out or leave working 6months or a year.''

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**One Count**
*Reprisal for Engaging in Protected Activities*

**One Count**
*Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.*

**One Count**
*Hostile and Abusive Working Environment*

From: Mr. Rusk Rusk <zach.rusk@icloud.com>
Date: April 16, 2015 at 10:07:18 AM MDT
To: Jeff Porter <Jeff.Porter.SLC@FMR.COM>
Cc: Zachary Rusk <zach.rusk@gmail.com>, Stacey Schmidt <stacey.schmidt@fmr.com>, Jewel Ellis <Jewel.Ellis@fmr.com>, Andrea Jung <Andrea.Jung@FMR.COM>

Subject: Coaching notes: 4/16/15 9-9:30pm

''Jeff also handed me an MVP certificate. I said Jeff, this is nice but I don't care for vanities. I just want to be able to grow and help clients at higher levels and not experience continued discrimination and retaliation.''

''Once again, I asked Jeff if there is anything I could be doing that I'm not already doing and what would be a threshold that would be acceptable and measurable to him as he is the one providing coaching, since he declined to recognize no one is 100%, even while we can strive to be 100% and while someone may not meet the tickets to play and that of objective metrics yet receive 50% subjective scores from a manger like him who identifies exclusively with their religion or even former backgrounds, and do not have a ADA qualified disability, can be more highly looked upon (graded better) than someone who has shown superior objective metrics, overtime, contributing to the firm in innovation, etc., and even 90% of the subjective manager discretion scores (or far less due to discrimination and retaliation, while still receiving MVP recognitions).''

''Jeff has said he continues to recomend me for The roles I've applied to and interviewed for. I asked Jeff why as it can appear contrary to what he says and continues to degrade me for.''

''While Jeff makes intimidating degrading remarks to me, like saying I'm being insubordinate after I asked the above question, Jeff told me to do things that other managers have told me not to do such as being proactive vs reactive. This feedback has been inconsistent and variable and whole j can have done this in the last and changed per new feedback / flip flopping, the managers can find ways to use it against me that they don't do to unto others. ''

''Just like SPA can be done in certain ways and be sufficient or insufficient for different managers and different teammates or even people in my role across the country, while one or more managers of a class can choose to grade differently and against even department guide.''

''I again informed Jeff, like I've been advised to keep notes and do so in writing, that Jeff's intimidating, predatory, targeting etc., behavior is inappropriate and makes for a very unhealthy environment. ''

Mr. Rusk was told by Ellen Riggi, Senior accommodations specialist/approver that once FMLA was granted, that they would retroactively adjust sick time used. The retroactive adjustment was not made. Jewel Ellis and Andrea Jung and Stacey Schmidt, Jeff Porter an others were aware of this through email communications.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**One Count**
*Reprisal for Engaging in Protected Activities*

**One Count**
*Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.*

**One Count**
*Hostile and Abusive Working Environment*

Mr. Rusk continued to have a lot of odd tech issues occurring. Mr. Rusk was told by Jeff Porter to email tech since Mr. Rusk was not able to report through reportit.fmr.com.

2014-2015 - Mr. Rusk continued to receive MVP recognitions. Objective and subjective scoring metrics changed (see email communication from April 19, 2015 at 3:01:59 PM MDT between Mr. Rusk Rusk, Jeff Porter, Jewel Ellis and Andrea Jung) - including Average Handle Time, Inbound Efficiency, Schedule Efficiency, HD Usage, Leads, Overtime Requirements, Distribution Request operational processes, vacation requests, more of the next generation call center testing was implemented.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

**One Count**
*Reprisal for Engaging in Protected Activities*

**One Count**
*Hostile and Abusive Working Environment*

2015: Mr. Rusk received texts in 2015 from a manager of a department Mr. Rusk applied to. His name is Brady Southerland and Mr. Southerland reached out to Mr. Rusk. Brady made advances on Mr. Rusk in these texts to Mr. Rusk's personal cell phone.

Mr. Rusk was approved for coverage for surgery in May/June of 2015. In email communications including Ellen Riggi, Jewel Ellis, Andrea Jung, Stacey Schmidt and Jeff Porter, FBS was aware of this. FBS and the above names were also aware Mr. Rusk had an appt scheduled to fill out FMLA paperwork for this surgery to be eligible for ST disability and FMLA time Mr. Rusk business days after Mr. Rusk was terminated effective immediately on April 23rd 2015.

**One Count**

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

**One Count**
*Reprisal for Engaging in Protected Activities*

From: Colgan, Christopher
Sent: Thursday, April 09, 2015 2:49 PM
To: Rusk, Zachary; Porter, Jeff (SLC)
Cc: Swanson, Charity; Ellis, Jewel; Jung, Andrea; Schmidt, Stacey

Hello Zach:

We've completed a thorough review of our PI Policy and Procedures as well as all applicable corporate policies related to your request.

Based on that review, we are in agreement that if you are not holding yourself out as a Fidelity employee, and are not mentioning any Fidelity products or services during your talk, then you do not need to have the speech pre-reviewed by Jeff Porter or me.

Remember that only direct expenses like airfare, lodging and food can be covered.

Thanks

Chris C. Colgan
Director, Compliance
PWI Risk and Compliance Fidelity Investments
49 North 400 West
Salt Lake City, UT 84101 Internal: 801-537-2192 Blackberry: 801-703-1867


From: Rusk, Zachary
Sent: Wednesday, April 08, 2015 5:39 PM
To: Colgan, Christopher; Porter, Jeff (SLC)
Cc: Swanson, Charity
Subject: RE: Compliance Question

Hi Chris,

This is a non-public event at a private school. I will not be accepting anything, including travel and lodging.

Thanks!

Zach

-----Original Message-----
From: Porter, Jeff (SLC)
Sent: Wednesday, April 08, 2015 10:52 AM
To: Rusk, Zachary
Subject: RE: Compliance Question

Zach,

Let me know once you make your final decision on as to whether or not you will be participating in this event.  If you decide to participate, I will need a copy of the commencement speech you plan on presenting in advance for review and approval.  The approval process can take some time so I need the copy from you ASAP.

Jeff Porter (SLC)
SLC Service Group

tel: 801-537-2187
blackberry: 801-419-9238
jeff.porter.slc@fmr.com

-----Original Message-----

From: Colgan, Christopher
Sent: Wednesday, April 08, 2015 12:28 PM
To: Rusk, Zachary; Porter, Jeff (SLC)
Cc: Swanson, Charity
Subject: FW: Compliance Question

Zach and Jeff:

I'll be handling all inquiries related to this matter moving forward.

Zach - to answer your question here....Yes, you are required to submit the final copy of your proposed commencement presentation to Jeff Porter and me for review and approval.  Review of communications to the public by a Supervisory Principal is a compliance requirement for situations like this.

Chris C. Colgan
Director, Compliance
PWI Risk and Compliance
Fidelity Investments
49 North 400 West
Salt Lake City, UT 84101
Internal: 801-537-2192
Blackberry: 801-703-1867

You can and I advise you should.  As Theresa pointed out, the third party can pay the exact amount for travel, lodging and food, no other expenses such payment for services, business entertainment such as golf, etc.  You should also prepare the presentation and have it reviewed and approved by your manager.  Please let me know if you have further questions.

Thank you.

Gary

Gary E. Stevens
Vice President, Chief Ethics Officer
PWI Risk and Compliance
Fidelity Investments
245 Summer St.
Boston, MA  02210
tel: 617-563-6915
fax: 508-229-9527
gary.stevens@fmr.com

**One Count**

Page 18 of 21

*In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended*

### One Count

*In violation of the Title VII of the Civil Rights Act of 1964, as amended*

### One Count
*Reprisal for Engaging in Protected Activities*

### One Count
*Hostile and Abusive Working Environment*

Mr. Rusk's email communications increased in the last year at FBS, and pertaned to issues regarding discrimination, FMLA problems/requests, accommodation requests, tech challenges, operational hurdles, coaching notes and notes to self.

Mr. Rusk has been diagnosed with a generalized anxiety disorder which goes hand and hand with Tourette Syndrome, Mr. Rusk's ADA qualified disability. Anxiety increases tics for Mr. Rusk, which decreases focus and increases other symptoms of Mr. Rusk's ADA qualified disability. Mr. Rusk's anxiety was enormously exacerbated through how Mr. Rusk was treated at FBS. Mr. Rusk continues to have significant anxiety from these occurrences. Mr. Rusk now also has significant pain sitting or standing for more than 20-30 minutes at a time. This can require Mr. Rusk to be on SSDI. Future wages calculated to be above $7.2m.

### Eighteen Counts - ADA Discrimination

### (In violation of the Americans with Disabilities Act of the Civil Rights Act of 1964, as amended)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged at length herein constitutes discrimination based on

disability. The stated reasons for the Defendant's conduct were not the true reasons, but instead

were pretext to hide the Defendant's discriminatory animus.

### Twenty-Two Counts - Religious Discrimination

### (In violation of the Title VII of the Civil Rights Act of 1964, as amended)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged above constitutes discrimination based on religion.

The stated reasons for the Defendant's conduct were not the true reasons, but instead were

pretext to hide the Defendant's discriminatory animus.

## Fourteen Counts
### (Reprisal for Engaging in Protected Activities)

The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he

engaged in activities protected by Title VII and the ADEA. The stated reasons for the

Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's

retaliatory animus.

## Four Counts
### (Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.)

Plaintiff realleges and incorporates by reference each allegation contained in
each aforementioned paragraph as thoughtfully set forth herein.

FBS has discriminated against Mr. Rusk by denying him reasonable accommodation for his
disabilities, including occupational stress, in violation of the Rehabilitation Act of 1973, 29
U.S.C. § 701 et seq., as amended.

FBS has conducted itself intentionally, deliberately, willfully, and in callous disregard of the
rights of Mr. Rusk.

By reason of FBS's discrimination, Mr. Rusk is entitled to all legal and equitable remedies
available under the Rehabilitation Act.

**Eleven Counts**
**(Hostile and Abusive Working Environment)**

The foregoing paragraphs are realleged and incorporated by reference herein.

The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab Act, and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

**Prayer for Relief**

WHEREFORE, the Plaintiff requests that the court award him:

(a) Future wages calculated at just over $7,200,000.00;

(b) costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(c) other damages and further relief as deemed just.

**JURY DEMAND**

The Plaintiff requests trial by jury.

**Declaration Under Penalty of Perjury:**

Respectfully Submitted,

Zachary R. E. Rusk

50 S 500 W

Salt Lake City, UT 84101