## IN THE UNITED STATE DISTRICT COURT
## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ZACHARY R.E. RUSK, an individual,** | **REPORT & RECOMMENDATION** |
| **Plaintiff,** | |
| | **Case No.  2:15-cv-00853-JNP** |
| **vs.** | |
| | **Magistrate Judge Dustin B. Pead** |
| **FIDELITY BROKERAGE SERVICES, LLC,** | **District Court Judge Jill N. Parrish** |
| **Defendant.** | |

## <u>INTRODUCTION</u>

This case is before Magistrate Judge Dustin Pead pursuant to a 28 U.S.C. §636(b)(1)(B) referral from District Court Judge Jill Parrish.[1] Currently pending is: (1) Defendant Fidelity Brokerage Services, LLC's (Fidelity or Defendant) motion to dismiss second amended complaint,[2] motion to quash subpoena,[3] and renewed motion for summary judgment.[4] Also pending is Plaintiff Zachary Rusk's (Mr. Rusk or Plaintiff) motion for expedited consideration[5]

---

[1] The District Court originally referred this case to Magistrate Judge Brooke Wells pursuant to 28 U.S.C. §636(b)(1)(B). (ECF No. 9.) Judge Wells issued an Order of Recusal on May 23, 2016, and the case was reassigned to Magistrate Judge Paul Warner. (ECF No. 42.) Judge Warner issued an Order of Recusal on September 20, 2017, and the case was referred to Magistrate Judge Evelyn Furse. (ECF No. 77.) On May 5, 2017, Judge Furse issued an Order of Recusal and the case was re-assigned to the above entitled court for all further proceedings. (ECF No. 100.)

[2] *See* ECF No. 117.

[3] *See* ECF No. 116.

[4] *See* ECF No. 126.

[5] *See* ECF No. 144.

and ex parte motion to allow communications with Fidelity regarding access to certain accounts and assets held at Fidelity.[6]

## BACKGROUND

On December 15, 2015, Magistrate Judge Paul Warner granted Mr. Rusk's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. §1915 and Plaintiff filed his initial complaint.[7]

### Fidelity's First And Second Motions To Dismiss And Motion For Summary Judgment.

On January 12, 2016, Fidelity filed a motion to dismiss Mr. Rusk's complaint or for a more definite statement.[8] Magistrate Judge Evelyn Furse denied Fidelity's motion for dismissal, and granted its motion for a more definite statement directing Mr. Rusk to file an amended complaint in compliance with federal pleading requirements.[9]

On November 17, 2016, Mr. Rusk filed his amended complaint and Fidelity responded with a second motion to dismiss or for a more definite statement.[10] The case was referred to this court on May 5, 2017.[11] Shortly thereafter, Fidelity filed a motion for summary judgment

---

[6] *See* ECF No. 126.

[7] *See* ECF No. 3, ECF No. 4, *see also* 28 U.S.C. §1915.

[8] *See* ECF No. 14.

[9] Judge Furse directed Mr. Rusk to file an amended complaint: (1) stating each of his claims; (2) providing factual allegations in support of each claim; (3) indicating which Defendant is liable for each claim; and (4) numbering each paragraph. Judge Furse further required Plaintiff to specify which exhibit, and which document within the exhibit, supported each of his claims. (ECF No. 83 at 4.)

[10] *See* ECF No. 87, ECF No. 88.

[11] *See* ECF No. 100.

arguing Mr. Rusk lacked standing based on his assignment of claims to third party Liberty

Gateway Properties, L.C. (Liberty Gateway).[12]

       This court denied Fidelity's motion for summary judgment on July 13, 2017, concluding

the record did not contain sufficient information for it to make a dispositive ruling on standing.[13]

The court also denied Fidelity's second motion to dismiss and granted Mr. Rusk twenty days to

address the deficiencies in his amended pleading.[14] Six days later, Mr. Rusk filed his second

amended complaint.[15]

### Fidelity's Third Motion To Dismiss And Renewed Motion For Summary Judgment.

       Fidelity filed a third motion to dismiss Mr. Rusk's complaint and a motion to quash

Plaintiff's subpoena on August 2, 2017.[16] Fidelity also renewed its motion for summary

judgment and provided Declarations in support of its standing argument.[17]

---

[12] *See* ECF No. 103.

[13] *See* ECF No. 113.

[14] Plaintiff was given leave to amend so as to include: "(1) [a] short, plain statement of each cause of action including reference to the specific statute or legal right that was violated; (2) [s]hort, succinct and specific factual allegations in support of each claim that are set forth in numbered paragraph form; (3) [i]dentification of what each 'Defendant Liable' did, and when; and (4) [a] connection between any relevant exhibits and the specific claim alleged." (ECF No. 113 at 9) (Emphasis in original). The court admonished Rusk that failure to comply with the Court's Order could result in dismissal of the action. *Id.*

[15] *See* ECF No. 114.

[16] *See* ECF No. 116, ECF No. 117.

[17] *See* ECF No. 126, ECF No. 126-1 ("Declaration of Jason D. Boren"), ECF No. 126-2 ("Declaration of Kirk A. Cullimore").

On November 1, 2017, this court issued a Report and Recommendation advising the District Court to grant Fidelity's renewed motion for summary judgment based on Mr. Rusk's assignment of claims.[18]

**Rusk's Objection To Report And Recommendation And New Evidence**.

Approximately one week after the Report and Recommendation issued, Mr. Rusk filed an objection.[19] Attached to the objection was new documentation evidencing the recent re-purchase of his claims.[20] As a result, the District Court remanded the matter to this court with instructions to consider the documents in the context of Fidelity's renewed motion for summary judgment and its motion to dismiss the second amended complaint.[21]

**Order To Show Cause**.

On January 19, 2018, the court issued an Order to Show Cause requesting information from Mr. Rusk regarding his EEOC Charge.[22] In response, Mr. Rusk filed a copy of his right to sue letter issued by the EEOC on November 23, 2015.[23]

**DISCUSSION**

---

[18] *See* ECF No. 139.

[19] *See* ECF No. 140.

[20] *See* ECF No. 140-1 ("Bill Of Sale"), ECF No. 140-2 ("Satisfaction of Judgment").

[21] The District Court adopted that portion of Judge Pead's Report granting Mr. Rusk's motion to unseal Exhibits A and B of his response to Defendant's motion for summary judgment. *See* ECF No. 143.

[22] *See* ECF No. 147.

[23] *See* ECF No. 148.

The following motions are ripe for discussion: (1) Fidelity's renewed motion for summary judgment,[24] (2) Fidelity's motion to dismiss second amended complaint,[25] (3) Fidelity's motion to quash Plaintiff's subpoena,[26] (4) Mr. Rusk's motion for expedited consideration,[27] and (5) Mr. Rusk's ex parte motion to allow communications regarding access to certain accounts and assets held at Fidelity.[28]

1. **Fidelity's Renewed Motion For Summary Judgment.**

On November 1, 2017, this court issued a Report and Recommendation granting Fidelity's renewed motion for summary judgment.[29] Less than two weeks after the recommendation issued, Mr. Rusk produced information demonstrating that as of November 8, 2017, he had repurchased all rights, title and interest in his claims against Fidelity.[30]

Based on the repurchase of his claims, Mr. Rusk now has standing to bring this action and the court strikes its earlier recommendation granting summary judgment in favor of Fidelity. Accordingly, Fidelity's renewed motion for summary judgment is denied.[31]

---

[24] *See* ECF No. 126.

[25] *See* ECF No. 117.

[26] *See* ECF No. 116.

[27] *See* ECF No. 144.

[28] *See* ECF No. 146.

[29] *See* ECF No. 139.

[30] *See* ECF No. 140-1.

[31] Fidelity does not object to striking the court's prior recommendation and asks that the court consider its previously

**2.  Fidelity's Motion To Dismiss The Second Amended Complaint.**

On August 8, 2017, Fidelity filed its motion to dismiss Plaintiff's second amended complaint for failure to comply with the pleading requirements of rule 8 and failure to state a claim under rule 12(b)(6).[32]

### The Complaint

Despite two separate orders requiring him to do so, Mr. Rusk fails to provide a clear connection between the seventy-three pages of exhibits attached to his second amended complaint and the causes of action alleged against Fidelity.[33] As a result, the court will only consider those exhibits that are specifically referenced in the body of the pleading. Additionally, the court rejects Mr. Rusk's assertion that Fidelity failed to file a timely answer and therefore his facts are deemed admitted.[34] Fidelity's second motion to dismiss tolled the time for filing an answer until after resolution of the motion.[35]

Mr. Rusk's second amended complaint is difficult to apprehend. Events are not listed in chronological order and unrelated facts are joined together absent a clear explanation for doing so. Further, the relationship between the numerous individuals identified in the complaint, Mr.

---

filed motion to dismiss Plaintiff's second amended complaint. *See* ECF No. 141.

[32] *See* ECF No. 117. *See also,* Fed. R. Civ. P. 8, Fed. R. Civ. P. 12(b)(6).

[33] *See* ECF No. 83 at 4, ECF No. 113 at 9 (requiring Mr. Rusk to amend his complaint to provide: "[a] connection between any relevant exhibits and the specific claim alleged.").

[34] *See* ECF No. 199.

[35] *See* Fed. R. Civ. P. 12(a)(4)(A). *See also Burris v. Bob Moore Auto Group, Inc.,* 517 Fed. Appx. 639, 640 (10th Cir. 2103) ("When a complaint has been challenged by a motion to dismiss, Rule 12(a)(4)(A) supplants the filing deadlines in Rule 12(a)(1)(A), tolling the time for an answer until fourteen days after notice that the motion has been denied.").

Rusk, and Fidelity is unclear, and the majority of facts provided are not relevant to any of the stated causes of action. Nonetheless, the court attempts to provide a moderately coherent narrative of Plaintiff's allegations. In doing so, the court accepts Mr. Rusk's well-pled factual allegations as true and resolves "all reasonable inferences in the plaintiff's favor."[36]

Plaintiff Zachary Rusk is a resident of Newton, Utah.[37] In April of 2013, Fidelity offered him a job.[38] At some point between 2013 and 2015, Mr. Rusk told Fidelity about his "ADA qualified conditions" "such as [T]urrette [S]yndrome or ADD"[39] and "Asperger's-Mild Form Autism Spectrum, Scoliosis, T1-T12 Harrington Rod fusion and Dyspraxia."[40]

Fidelity did not provide Mr. Rusk with industry exam study materials before other employees or allow him to study at home,[41] and Defendant "took a lot longer" to provide him with a sit/stand work station.[42] In 2014 and 2015, Fidelity refused to give Plaintiff a public bus pass, but gave passes to employees with Mormon histories who did not have "ADA qualified conditions."[43]

---

[36] See *Diversey v. Schmidly*, 738 F. 3d 1196, 1199 (10th Cir. 2013).

[37] See ECF No. 114, ¶4.

[38] See ECF No. 114, ¶9b.

[39] See ECF No. 114, ¶10, ¶21.

[40] See ECF No. 114, ¶33.

[41] See ECF No. 114, ¶10, ¶19, ¶33.

[42] See ECF No. 114, ¶13-1.

[43] See ECF No. 114, ¶35, ¶80, ¶81.

In early 2014, Fidelity manager Greg Proctor asked Mr. Rusk if he was "LDS/Mormon."[44] In "at least 2014 and early 2015" Mr. Rusk requested Sundays off to attend church and care for his mother.[45] Plaintiff's requests were denied.[46] Fidelity allowed employees with "LDS/Mormon History" and without "ADA Qualified Conditions" to have Sundays off of work.[47]

Between 2014 and 2015, Mr. Rusk "maintained reasonable superior objective metrics but his subjective manager discretion performance reviews by management, including Greg Proctor" started to "decline after [Mr.] Rusk was asked of his religion and requested accommodations for his ADA qualified conditions."[48] In early 2015, Mr. Rusk requested a nine-to-six work schedule to accommodate his sleep apnea and aerophenasia.[49] Plaintiff's request was denied.[50]

In early 2015, Plaintiff was asked to give the commencement speech at his ten year high school reunion.[51] Fidelity policy requires employees to obtain prior approval before making "outside" speeches.[52] Fidelity required "unreasonable and overly onerous documentation" about

---

[44] *See* ECF No. 114, ¶23.

[45] *See* ECF No. 114, ¶30a, ¶30b.

[46] *See* ECF No. 114, ¶31a.

[47] *See* ECF No. 114, ¶31b.

[48] *See* ECF No.114, ¶25.

[49] *See* ECF No. 114, ¶38, ¶39.

[50] *See* ECF No. 114, ¶40.

[51] *See* ECF No. 114, ¶48.

[52] *See* ECF No. 114, ¶49a.

Mr. Rusk's high school commencement speech which caused him to become depressed and to suffer anxiety and stress.[53]

In late 2014 or early 2015, Fidelity's attorney sent an email to Mr. Rusk warning of corrective action if he filed an Equal Employment Opportunity Commission (EEOC) Charge.[54] Mr. Rusk filed his EEOC Charge against Fidelity on April 7, 2014, alleging religious and disability based discrimination.[55] Fidelity was served with Mr. Rusk's EEOC Charge in "late 2014 to early 2015" and "put [Mr.] Rusk on a written warning." [56]

On April 23, 2015, Fidelity terminated Mr. Rusk. Fidelity wrote on Plaintiff's CRD/U5 termination form that his employment had ended due to "unprofessional communications with peers or co-worker."[57]  In 2015 TD Ameritrade made Mr. Rusk an offer of employment, but later rescinded the offer after review of Plaintiff's CRD/U5 termination form.[58]

Based thereon, Mr. Rusk brings claims against Fidelity for: (1) Violation of Title I of the Americans With Disabilities Act (ADA), (2) Religious Discrimination in violation of Title VII of the Civil Rights Act of 1964, (3) Reprisal for Engaging in Protected Activities, (4) Violation of the Rehabilitation Act of 1973, and (5) Violation of Utah Code Annotated

---

[53] *See* ECF No. 114, ¶49a, ¶51.

[54] *See* ECF No. 114, ¶75.

[55] *See* ECF No. 114-1.

[56] *See* ECF No. 114, ¶53b.

[57] *See* ECF No. 114, ¶68, ¶72jj.

[58] *See* ECF No. 114, ¶72l, ¶72n.

§45-2-2, Libel and slander, defamation.[59] Plaintiff seeks injunctive and monetary relief in the amount of $300,000 "per occurrence . . . with over 20 occurrences" and future wages of $90,000 per year based on his termination at age twenty-eight through his projected retirement age of sixty-seven.[60]

### Rusk's Amended Complaint Fails To Comply With Rule 8 Of The Federal Rules Of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[61] These requirements are reinforced under rule 8(d) which instructs that "each allegation must be simple, concise, and direct."[62] Compliance with rule 8 requires that a pleading "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."[63] This information is necessary to provide fair notice of the claims and to show, if proven, that plaintiff is entitled to relief.[64] Mr. Rusk is a pro se litigant and the court must interpret his complaint liberally.[65] In doing so,

---

[59] *See* ECF No. 114, ¶¶13l-148.

[60] *See* ECF No. 114, at 23-24.

[61] Fed. R. Civ. P. 8(a)(2); *see also* DUCivR 3-5 (the complaint "should state the basis for the court's jurisdiction, the basis for the plaintiff's claim or cause for action, and the demand for relief.").

[62] Fed. R. Civ. P. 8(d)(1).

[63] *Nasious v. Two Unknown  B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007).

[64] *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Assn. of Kansas,* 891 F.2d 1473, 1480 (10th Cir. 1989) (*citing Perington Wholesale Inc. v. Burger King Corp.,* 631 F.2d 1369, 1371 (10th Cir. 1979); *see also Nasious,* 492 F.3d 1163 (10th Cir. 2007) (a plain statement under rule 8 provides a defendant with "sufficient notice to being preparing its defense and the court sufficient clarity to adjudicate the merits.").

[65] *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991).

however, the court may not act as an advocate or organize and fill in the missing elements of Mr. Rusk's claims.[66]

The court afforded Mr. Rusk two separate opportunities to amend his complaint in order to comply with rule 8 requirements.[67] Even so, Plaintiff's second amended complaint remains unorganized and lacks chronology, "clarity and intelligibility."[68] Plaintiff makes conclusory statements that are devoid of the factual enhancements necessary to state proper claims.[69] Further, there is no link between Mr. Rusk's two hundred plus facts, Fidelity's allegedly wrongful conduct and Plaintiff's specific causes of action. Absent a clear connection between facts and claims, the court is without the information necessary to adjudicate and Fidelity lacks the ability to adequately defend itself.

For these reasons, the court recommends dismissal of Mr. Rusk's second amended complaint for failure to adhere to the pleading requirements of federal rule 8.[70] Alternatively, Mr.

---

[66] *See Chavez v. Huerfano County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (*citing Hall* at 1110) ("It is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case."); *see also Glenn v. First. Nat'l. Bank in Grand Junction*, 868 F.2d 368, 371-72 (10th Cir. 1989).

[67] *See* ECF No. 83, ECF No. 113.

[68] *Mitchell v. City of Colo. Springs, Colo.*, 194 Fed. Appx. 497, 498 (10th Cir. 2006).

[69] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 165-66, 1974, 167 L.Ed.2d 929 (2007) (A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements" will not suffice.).

[70] Dismissal is an extreme sanction. In making this recommendation, the court has considered "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; [and] (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance." *Erenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citation and quotation omitted). Mr. Rusk failed to comply with two prior orders of the court granting him leave to observe rule 8 federal pleading requirements. *See* Fed. R. Civ. P. 37(b)(2)(C). Moreover, the court warned that a failure to comply could result in dismissal of his action. *See* ECF No. 113 at 9.

Rusk's second amended complaint fails to state a claim for relief and, as set forth below, the court recommends dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[71]

### **Mr. Rusk's Complaint Fails To State A Claim On Which Relief May Be Granted Pursuant To Federal Rule Of Civil Procedure 12(b)(6).**

Mr. Rusk's fails to state a claim on which relief may be granted and the court recommends dismissal of his second amended complaint pursuant to federal rule 12(b)(6).[72] The court addresses the applicable standard of review along with each of Mr. Rusk's stated claims.

### **Standard Of Review**

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[73] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[74] In other words, a plaintiff must plead both a viable legal theory and enough factual matter that, taken as true, makes the claim for relief

---

[71] *See* Fed. R. Civ. P. 12(b)(6).

[72] When the court authorizes a party to proceed without the prepayment of fees under the IFP statute, the court is required to "dismiss the case at any time if the court determines that . . .the action or appeal. . . is frivolous or malicious. . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. §1915(e)(2)(B)(i),(ii). In determining whether a complaint fails to state a claim for relief under the IFP statute, the court employs the same standard that is used for analyzing motions to dismiss for failure to state a claim under federal rule 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id.* at 1218 (quotations and citations omitted) (second alteration in original). Mr. Rusk proceeds IFP and the court concludes, in addition to dismissal under rule 12(b)(6), dismissal of Mr. Rusk's complaint is also appropriate for failure to state a claim on which relief may be granted pursuant to the IFP statute. *See* ECF No. 3, *see also* 28 U.S.C. §1915(e)(2)(B)(i)(ii).

[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[74] *Id.* at 662 (citation omitted).

plausible on its face.[75] Plausibility speaks "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[76] When reviewing a complaint under rule 12(b)(6), the court accepts all plausible factual allegations as true but need not accept "unwarranted inferences, unreasonable conclusions, or arguments."[77] Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice,"[78] and the complaint must provide "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[79]

The rule 12(b)(6) standard does not require a plaintiff to "establish a prima facie case in a complaint, [but] the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim."[80] Determination of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[81] Indeed, "where the well-pleaded facts do not permit

---

[75] *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

[76] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*quoting Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir. 2008).

[77] *Eastern Shore Mkt.'s Inc. v. J.D. Assoc's., LLP,* 213 F.3d 175, 180 (4th Cir. 2000).

[78] *Iqbal*, 556 U.S. at 678.

[79] *Twombly,* 550 U.S. at 55 (quotation omitted).

[80] *Id.* at 1191.

[81] *Iqbal*, 556 U.S. at 679.

the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' that the pleader is entitled to relief."[82]

**Causes Of Action**

Plaintiff alleges causes of action for: (1) Violation of Title I of the Americans with Disabilities Act (ADA); (2) Religious Discrimination in Violation of Title VII ; (3) Reprisal for Engaging in Protected Activities; (4) Violation of the Rehabilitation Act of 1973; and (5) Violation of Utah Code Ann. § 45-2-2.

**Title I of the ADA & the Rehabilitation Act.**[83]

Title I of the ADA "prohibits employment discrimination by states and other employers against a qualified individual with a disability on the basis of that disability."[84] Similarly, the Rehabilitation Act prohibits discrimination on the basis of disability in programs or activities conducted by federal agencies or that are receiving federal financial assistance.[85]

As an preliminary matter, Mr. Rusk cannot state a viable Rehabilitation Act claim because there is no allegation that Fidelity operates as a federal agency or receives federal funding assistance. [86] Mr. Rusk alleges that Fidelity "holds Rolls Royce ERISA accounts, such as

---

[82] *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

[83] A plaintiff asserting claims under Title I of the ADA, the Rehabilitation Act and Title VII of the Civil Rights Act must exhaust administrative remedies as a prerequisite to filing suit in federal court. *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1183 (10th Cir. 2007) (citing *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1274 (10th Cir. 2005). Mr. Rusk has done so here through the timely filing of his EEOC Charge. *See* ECF No. 147.

[84] *Bd. of Trs. v. Garrett*, 531 U.S. 356, 361, 121 S. Ct. 955, 148 L. Ed.2d 866 (2001), *see* 42 U.S.C. §12112(a).

[85] *See* 29 U.S.C. §794, *see also Schrader v. Fred A. Ray, M.D., P.C.,* 296 F.3d 968, 917 (10th Cir. 2002) ("This statute makes available a private right of action to qualified individuals who have been subjected to employment discrimination by a program or activity *receiving federal financial assistance.*" (Emphasis added).

[86] *Bouck v. Utah DOT,* 2006 U.S. Dist. LEXIS 61446 at *19-20 (D. Utah Aug. 28, 2006) (*citing MacKenzie,* 414

401k's"[87] and "Rolls Royce qualifies as a contractor under E.O. 11245/11246 because it obtains over $10,000.00 in government subsidies, contracts, or business, annually."[88] But, an allegation that Fidelity holds Rolls Royce's financial accounts does not lead to the conclusion that Fidelity receives federal funding. And, even assuming a plausible allegation of federal funding, as set forth below, Mr. Rusk's Rehabilitation Act claim further fails for a failure to allege disability.

Both the ADA and the Rehabilitation Act involve the same "substantive standards" for determining disability and the sufficiency of Mr. Rusk's claim for disability under both is addressed together.[89] To establish a prima facie case, a plaintiff must allege he "(1) is a disabled person . . . ; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."[90] An individual is disabled if he "(A) [has] a physical or mental impairment that substantially limits one or more major life activities of such individual;[91] (B) [has] a record of such impairment; or (C) [is] being regarded as having such

---

F.3d at 1274) (To establish a prima facie claim under the Rehabilitation Act "plaintiff must allege the employer receives federal financial assistance.").

[87] *See* ECF No. 114, ¶5c.

[88] *See* ECF No. 114, ¶5d.

[89] *See Sanchez v. Vilsack,* 695 F.3d 1174, 1177 n.2 (10th Cir. 2012) ("Regardless of whether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining whether an individual is disabled are the same."), *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.,* 565 F.3d 1232, 1245 (10th Cir. 2009).

[90] *Dewitt v. Sw. Bell Tel Co.,* 845 F.3d at 1299, 1308 (10th Cir. 2017) (*quoting E.E.O.C. v. C.R. Eng. Inc*., 644 3d 1028, 1037-38 (10th Cir. 2011).

[91] Major life activities are defined as "activities that are of central importance to daily life," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed.2d 615 (2002) (superceded by ADA Amendments Act of 2008), and "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102.

impairment . . . ."[92] The definition of disability is construed "in favor of broad coverage"[93] but not every impairment is considered to be a "disability" under the law. Rather, the impairment must "limit a major life activity and the limit[ation] must be substantial."[94]

Throughout the complaint, Mr. Rusk makes numerous references to his "ADA qualified conditions." [95] He does little, however, to identify what his specific conditions are or how they qualify as a disability. "Merely having an impairment does not make one disabled for purposes of the ADA."[96] Mr. Rusk alleges his ADA qualified conditions "affect [his] ability to communicate, think, learn, [and] interact."[97] Yet, other than indiscriminately listing the names of various syndromes and disorders,[98] he provides no connection between his alleged impairments and the substantial limitation, if any, resulting therefrom. To state a proper claim, Mr. Rusk "must articulate with precision the impairment alleged and the major life activity affected by that

---

[92] *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2015) (internal citations omitted).

[93] 42 U.S.C. §12102(4)(A).

[94] *Capobianco v. City of New York,* 422 F.3d 47,56 (2nd Cir. 2005), *see* 42 U.S.C. §12102(2)(A).

[95] *See generally* ECF No. 114, ¶17 (claiming "ADA qualified conditions"), ECF No. 114, ¶25 (requesting "accommodations for his ADA qualified conditions."), ECF No. 114, ¶31a (claiming the "ADA qualified conditions"), ECF No. 114, ¶58 ("Rusk's ADA Qualified conditions."), ECF No. 114, ¶72fff ("Rusk's symptoms of his ADA conditions").

[96] *Toyota Motor,* 534 U.S. at 194-95.

[97] *See* ECF No. 114, ¶33.

[98] The following "disabilities" are randomly mentioned throughout Mr. Rusk's complaint: "turrette syndrome or ADD" (ECF No. 114, ¶21), "Asperger's-Mild Form Autism Spectrum, Scoliosis, T1-T12 Harrington Rod fusion . . . and Dyspraxia" (ECF No. 114, ¶33), obstructive and central "sleep apenea" (ECF No. 114, ¶39), "aerophenasia" (ECF No. 114, ¶39), and "depression, anxiety and stress." (ECF No. 114, ¶28, ¶41, ¶ 51, ¶64, ¶88, ¶111,¶125, ¶131.)

impairment." [99] Here, Mr. Rusk has not done so and he therefore fails to clear the initial hurdle of pleading facts sufficient to raise a claim for disability under both the ADA and the Rehabilitation Act.

### Religious Discrimination In Violation of Title VII.[100]

Title VII of the Civil Rights Act prohibits an employer from:

> Discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin.[101]

Religion includes those "aspects of religious observance and practice" that an employer is able to "reasonably accommodate . . . without undue hardship on the conduct of the employer's business."[102]

The facts offered in support of Mr. Rusk's religious discrimination claim are unclear. At best, Mr. Rusk alleges that in early spring of 2014, Greg Proctor, a manager at Fidelity, asked Plaintiff if he was "LDS/Mormon."[103] Next, between 2014 and 2015, Mr. Rusk's "subjective manager discretion performance reviews" from Mr. Proctor and others began to decline.[104] Plaintiff also alleges that his request to not work on Sundays was denied, but employees with an

---

[99] *Poindexter v. Atchison, T.& S. F. Ry.,* 168 F.3d 1228, 1232 (10th Cir. 1999).

[100] The exhaustion of administrative remedies requirement also applies to claims asserted under Title VII of the Civil Rights Act. *See Annett v. Univ. of Kan.,* 371 F.3d 1233, 1238 (10th Cir. 2004) (citation omitted).

[101] 42 U.S.C. §2000e-2(a)(1).

[102] 42 U.S.C. §2000e(j).

[103] *See* ECF No. 114, ¶23.

[104] *See* ECF No. 114, ¶25.

"LDS/Mormon History" were given Sundays off.[105]

Mr. Rusk's allegations are insufficient to state a claim for religious discrimination. First, Mr. Rusk does not allege his own religious beliefs or how his religious beliefs differ from those of  Mr. Proctor or others working at Fidelity. Absent this fundamental information, Plaintiff has not pled facts sufficient to establish discrimination and dismissal is appropriate. Second, even assuming that Mr. Rusk plead differences in religious beliefs between himself and Mr. Proctor, Mr. Rusk does not identify an adverse action or supply a plausible allegation to support an inference of discriminatory motive.[106] The mere fact that Mr. Proctor asked Mr. Rusk about his religious beliefs, without more, does not present a scenario suggesting religious discrimination.[107] Further, an adverse action contemplates a "significant change in employment status." [108] Here, Mr. Rusk does not plead the adversity of  Mr. Proctor's "subjective manager discretion performance reviews" or indicate the effect these reviews had on the status of his employment. In addition, Fidelity's alleged failure to accommodate Mr. Rusk's scheduling

---

[105] *See* ECF No. 114, ¶¶30a-31b.

[106] *See Shapolia v. Los Alamos Nat'l. Lab.,* 992 F.2d 1033, 1038 (10th Cir. 1993) (holding the prima facie test in a case where the plaintiff claims discrimination based on a failure to share religious beliefs with his supervisors is: "(1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs."). *See also Lawrence v. Mars, Inc.,* 994 F.2d 902, 905-906 (4th Cir.), *cert denied,* 121 L. Ed. 2d 40, 113 S. Ct. 79 (1992); *Meiri v. Dacon,* 759 F.2d 989, 995 (2nd Cir.), *cert. denied,* 474 U.S. 829, 88 L .Ed. 2d 74, 106 S. Ct. 91 (1985).

[107] *Defreitas v. Horizon Invest. Mgmt. Co.,* 577 F.3d 1151, 1162 (10th Cir. 2009) (*citing Fischer v. Forestwood Co.,* 525 F.3d 972, 978-79 (10th Cir. 2008) (emphasis and internal quotation marks omitted) (for prima facie case requiring "some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.").

[108] *Semsroth v. City of Wichita,* 304 Fed. Appx. 707, 718 (10th Cir. 2008) (*citing Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

request does not amount to an "adverse employment action" for purposes of establishing a plausible claim.[109]

    For these reasons, Mr. Rusk fails to state a claim for relief for religious discrimination.

### Reprisal For Engaging In Protected Activities.

    To establish a claim for retaliation under Title VII a plaintiff must show: (1) he engaged in protected opposition to discrimination, (2) plaintiff's employer took adverse employment action against him, and (3) a causal connection exists between the protected activity and the adverse action.[110] A plaintiff may prove retaliation through direct or circumstantial evidence[111] and an activity is considered "protected" if it is in opposition to "an unlawful employment practice by [Title VII.]"[112] Filing an EEOC charge is considered "protected opposition to discrimination that fulfills the first element of a retaliation claim."[113]

    Mr. Rusk engaged in protected opposition when he filed his EEOC claim on April 7, 2015.[114] Plaintiff's "written warning" claim, however, is insufficient to support an adverse

---

[109] *Thompson v. Kaufman's Bakery, Inc.,* 2005 U.S. Dist. LEXIS 22341 (W.D.N.Y. Mar. 16, 2005) (holding that, although employer did not accommodate employee's request to have Saturdays off for Sabbath observance, employee could not establish prima facie case where he was never disciplined or suffered any other type of adverse employment action."). and adverse actions are generally considered to amount to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

[110] *Fischer v. Forrestwood Co., Inc.,* 525 F.3d 972, 979 (10th Cir. 2008), *see also Estate of Bassatt v. Sch. Dist. No. 1,* 775 F.3d 1233, 1238 (10th Cir. 2014).

[111] *Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 549-50 (10th Cir. 1999).

[112] 42 U.S.C. § 2000e-3(a).

[113] *Johnson v. Weld County,* 2008 U.S. Dist. LEXIS 72620 *25 (D. Colo. 2008) (*citing Proctor v. United Parcel Service,* 502 F.3d 1200, 1208 n. 4 (10th Cir. 2007).

[114] *See* ECF No. 114, ¶75, ¶76, ECF No. 114-1.

employment action.  As discussed in conjunction with Mr. Rusk's discrimination claim,[115] an adverse action "must be materially adverse to the employee's job status."[116] Examples include "a change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[117] Here, there is no allegation that Fidelity's written warning changed Plaintiff's employment responsibilities, duties, financial compensation or benefits,[118] and without an adverse action it is impossible to perceive any causal connection.[119]

Mr. Rusk argues against dismissal of his retaliation claim asserting he "stated in statement of facts that their failure to grant accommodations lead to incapacities as well as constitute FMLA retaliation, hostile and abusive working environment, violations of the ADA, Title VII and E.O. 11245/11246."[120] Unfortunately, Plaintiff's statement does little to clarify the allegations and the cause of action should be dismissed for failure to state a claim.

---

[115] *See supra* at 18-19.

[116] *Duncan v. Manager, Dept. of Safety, Denver,* 397 F.3d 1300, 1314 (10th Cir. 2005).

[117] *Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1217 (10th Cir. 2003).

[118] *See Juarez v. Utah Dep't. of Health—Family Dental Plan,* 2006 U.S. Dist. LEXIS 69005 *32-*35. *See also, McGowan v. City of Eufala,* 472 F.3d 736, 742 (10th Cir. 2006) ("prospect of losing wages" as an adverse employment action), *Wells v. Colo. Dep't of Transp.,* 325 F.3d 1205, 1206 (10th Cir. 2003) (termination of job as an adverse employment action).

[119] *See Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1097, 1092 (10th Cir. 2007) (A causal connection between a protected activity and a materially adverse action exists when "plaintiff presents evidence of circumstances that justify an inference of retaliatory motive.").

[120] *See* ECF No. 119 at 4.

### Utah Code Ann. §45-2-2, Libel, Slander And Defamation.[121]

Last, Mr. Rusk claims Fidelity violated Utah Code Ann. §45-2-2 when it published false statements on his CRD/U5 termination form that prohibited him from obtaining other employment.[122] Utah Code Ann. §45-2-2 defines the terms "libel" and "slander".[123] The section does not establish an independent cause of action and dismissal is appropriate on this basis alone for failure to state a claim.[124] Likewise, Mr. Rusk does not state a cause of action for slander. Slander is defined as "libel communication spoken by words." [125] The allegations only address written statements contained in Mr. Rusk's termination form and no oral statements are pled.[126]

In addition, Mr. Rusk does not state a claim for defamation. To plead a common law claim for defamation under Utah law, Mr. Rusk must allege that Fidelity "published [ ] statements concerning him; that the statements were false, defamatory, and not subject to any privilege; that the statements were published with the requisite degree of fault and that their

---

[121] The court recommends dismissal of all Mr. Rusk's federal claims, and therefore no longer has jurisdiction over the case. *See* ECF No. 114. Thus, the court could decline to exercise supplemental jurisdiction over Mr. Rusk's remaining state law claim. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed the court may, *and usually should*, decline to exercise jurisdiction over any remaining state law claims.") (emphasis added and internal quotations omitted), *see also* 28 U.S.C. §1367(c)(3) (permitting federal courts to decline supplemental jurisdiction if all claims over which the court has original jurisdiction have been dismissed).

[122] *See* ECF No. 114, ¶146a(1), ¶146a(3).

[123] *See* Utah Code Ann. §45-2-2.

[124] Additionally, Chapter 45 is entitled "Publication and Broadcasting." *See* Utah Code Ann. §45-2-2. Each section in the chapter relates to claims involving publication or broadcasting companies (e.g. newspapers, television, radio, mass media entities).

[125] Utah Code Ann. §45-2-2(2), *Farm Bureau Life Ins. Co. v. Am. Nat'l. Ins. Co.*, 505 F. Supp. 2d 1178, 1191 (D. Utah 2007).

[126] ECF No. 114, ¶146a(1) ("FBS published statement(s) about Rusk, namely on his industry wide CRD/U5 form").

publication resulted in damage."[127] The degree of fault required turns on the plaintiff's status as a public or a non-public figure. For Mr. Rusk, a non-public, private individual, [128] the requisite degree of fault is negligence."[129]

Mr. Rusk alleges that Fidelity published false statements "with the required degree of fault as self-explanatory through the afore noted."[130] This conclusory and formulaic statement on degree of fault is devoid of the factual enhancements necessary to properly state a claim for defamation against Fidelity. Mr. Rusk does not allege Fidelity acted negligently in making the statements or in failing to investigate the truth of the statements when they were published. Accordingly, Mr. Rusk fails to state a claim for defamation or libel under Utah law and his cause of action should be dismissed.

## CONCLUSION

Mr. Rusk's second amended complaint fails to comply with the pleading requirements of federal rule 8 and fails to state a claim on which relief may be granted pursuant to federal rule 12(b)(6). Even when liberally construed, Plaintiff has not pled facts sufficient to support the plausibility of his claims and the court recommends dismissal of Mr. Rusk's complaint with prejudice.

---

[127] *Webb v. Claimetrics Mgmt., LLC.* 2009 U.S. Dist. LEXIS 113798 *15 (D. Utah Sept. 9, 2009) (*quoting West v. Thomson Newspapers,* 872 P.2d 999, 1007-08 (Utah 1994).

[128] Assuming, Mr. Rusk was a public figure he also fails to plead that Fidelity made defamatory statements with "actual malice". *See Wide Ass'n. of Specialty Programs v. Pure, Inc.,* 450 F.3d 1132, 1136 (10th Cir. 2006) (under Utah law, the requisite degree of fault demonstrated for defamation against a public figure is actual malice.); *New York Times v. Sullivan,* 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (defining actual malice as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not.").

[129] *MacArthur v. San Juan County,* 416 F. Supp. 2d 1098, 1184 (D. Utah 2005) (*citing Seegmiller v. KSL, Inc.,* 626 P.2d 968, 973 (Utah 1981).

## RECOMMENDATION

For the reasons set forth above, the court hereby recommends the following:

(1) Fidelity's Renewed Motion For Summary Judgment is DENIED (ECF No. 126). In so ruling, the court's prior Report & Recommendation is WITHDRAWN (ECF No. 139);

(2) Fidelity's Motion To Dismiss Plaintiff's Second Amended Complaint is GRANTED with PREJUDICE (ECF No. 117);

(3) Fidelity's Motion To Quash Plaintiff's Subpoena and Objection to Subpoena is

MOOT (ECF No. 116);

(4) Rusk's Motion For Expedited Consideration is MOOT (ECF No. 144); and

(5) Rusks' Ex Parte Motion To Allow Communications With Fidelity Regarding Access

To Certain Accounts And Assets Held At Fidelity is MOOT. (ECF No. 146.)

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections.[131] Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 7th day of February, 2018.

BY THE COURT

_____
DUSTIN B. PEAD
U.S. Magistrate Judge

---

[130] *See* ECF No. 114, ¶146a(5).
[131] *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).