# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH—CENTRAL DIVISION

| | |
|---|---|
| ZACHARY R.E. RUSK,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY BROKERAGE SERVICES LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DISMISSING ACTION<br><br>Case No. 2:15-cv-00853-RJS<br><br>Chief District Court Judge Robert J. Shelby |

Before the court is Defendant Fidelity Brokerage Services LLC's Motion for Order to Show Cause why Plaintiff Zachary Rusk should not be sanctioned for violating a court Order requiring him to limit his contacts with opposing counsel.[1] Fidelity argues Rusk has violated the Order by sending numerous and threatening emails to Fidelity's counsel. Fidelity urges that if Rusk cannot show adequate cause, the court should sanction him by dismissing his claims with prejudice. In response to Fidelity's Motion,[2] Rusk contends he should not be held in contempt of any Order and that he should not be sanctioned. As set forth below, the court concludes Rusk should be sanctioned for violating a clear order of the court, particularly where the violation threatens another and seriously undermines the administration of justice. The only appropriate response to this conduct is dismissal of Rusk's claims with prejudice.

---

[1] Dkt. 235.

[2] Dkt. 239.

## BACKGROUND

Rusk instigated this discrimination action against his former employer, Fidelity, on December 3, 2015.[3] On December 15, 2015, Magistrate Judge Paul Warner granted Rusk's motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915, and Rusk thereafter filed his initial Complaint pro se.[4] The case was then assigned to District Judge Jill Parrish, who on January 7, 2016, referred the case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636 (b)(1)(B) for handling, up to and including reports and recommendations on all dispositive matters.[5]

Shortly after Rusk filed his Complaint, Fidelity moved on January 12, 2016 to dismiss or for a more definite statement.[6] Over the next two and a half years, the parties filed multiple pre-discovery dispositive motions,[7] and among numerous other filings, Rusk was permitted to file three subsequent amended complaints—on November 17, 2016;[8] July 19, 2017;[9] and April 20, 2018.[10] After successfully moving to dismiss some claims in the Third Amended Complaint,[11] Fidelity eventually filed an Answer to the non-dismissed claims and discovery proceeded.[12]

---

[3] Dkt. 1, Sealed Motion for Leave to Proceed *In Forma Pauperis*; Dkt. 4, Complaint.

[4] Dkt. 3, Dkt. 4.

[5] Dkt. 4, Dkt. 9.

[6] Dkt. 14.

[7] Dkt. 88, Dkt. 103, Dkt. 117, Dkt. 126, Dkt. 166.

[8] Dkt. 87.

[9] Dkt. 114.

[10] Dkt. 165.

[11] Dkt. 196.

[12] Dkt. 201.

But early in the case, Rusk was engaged in a practice of sending Fidelity's counsel, Jason Boren, hundreds of irrelevant and threatening e-mails.[13] For instance, on April 9, 2016, Rusk sent Boren sixty-five (65) emails. And many emails he sent insinuated threats—either that Rusk would harm himself if he did not receive a favorable settlement, or that he would harm Boren and his family.

In response, Fidelity filed on April 11, 2016, an Ex Parte Motion to Limit Plaintiff's Emails and Prohibit Harassment.[14] Judge Wells granted that Motion and issued an Order on April 15, 2016 limiting contact from Rusk (Order Limiting Contact).[15] In the Order Limiting Contact, the court directed Rusk "to limit his contact with Defendant's Counsel to non-threatening, relevant matters involving this litigation, and . . . to limit contact to no more than three such communications per day."[16] The court expressly warned Rusk that "[v]iolation of the order may result in sanctions."[17]

On May 31, 2016, Judge Warner[18] issued a memorandum decision and order prohibiting Rusk from communicating with any federal court personnel via telephone, email or facsimile.[19] The order was based on Rusk's "pattern of excessive and abusive communications with court personnel, including hundreds of emails and calls to the clerk's office."[20] Judge Warner warned

---

[13] Dkt. 36 at 1.

[14] Dkt. 35.

[15] Dkt. 36.

[16] *Id*. at 2.

[17] *Id.*

[18] Judge Wells recused on May 23, 2016, and the case was reassigned to Magistrate Judge Paul Warner for all further proceedings. (Dkt. 42.)

[19] Dkt. 44.

[20] *Id.*

3

Rusk that violation of the Order "may result in the imposition of filing restrictions and/or sanctions."[21]

Later, in a November 28, 2018 Scheduling Order, Magistrate Judge Dustin Pead [22] reminded Rusk of his obligation to "comply with the Court's Order Granting Defendant's Motion to Limit Contact."[23]

On March 4, 2019, Fidelity filed an Expedited Motion for Order to Show Cause that is now before the court. Fidelity argues Rusk has violated the longstanding Order Limiting Contact, and seeks dismissal of the entire action as a sanction for this violation.[24] Fidelity also filed an *ex parte* Motion to Expedite consideration of its Motion for Order to Show Cause.[25] Judge Pead granted the Motion to Expedite on March 5, 2019, and in doing so, stated:

> [g]iven the concerning substance and volume of his communications, Plaintiff is further ORDERED to have no contact, direct or indirect, with attorney Jason Boren, until after the pending Order to Show Cause is resolved. Any failure to abide by this Order, requiring Rusk to cease contact, will result in immediate and potentially dispositive sanctions.[26]

On March 6, 2019, Rusk filed a Response to Fidelity's Motion for Order to Show Cause.[27] In the Response, Rusk asserts he should not be sanctioned for three primary reasons: 1)

---

[21] *Id.* at 2.

[22] On September 20, 2016, Judge Warner recused after Rusk sued him. Magistrate Judge Evelyn Furse was assigned. (Dkt. 77.) Then, on May 5, 2017, Judge Furse recused, and Magistrate Judge Dustin B. Pead was assigned. (Dkt. 100.) On March 28, 2019, Judge Pead recused. (Dkt. 257.)

[23] Dkt. 209 at 2.

[24] Dkt. 235; *see also* Fed. R. Civ. P. 41(b).

[25] Dkt. 236.

[26] Dkt. 237.

[27] Dkt. 239.

4

he is indigent, and absent his success on the claims he asserts, he will be financially ruined;[28] 2) the Order Limiting Contact is somehow void because, he mistakenly alleges, it was entered by Judge Warner in retaliation for prior misconduct complaints Rusk had lodged against him,[29] and 3) he did not willfully violate the Order Limiting Contact because he is undergoing "a number of serious medication changes."[30] Rusk also apologized to Fidelity's counsel and to the court.[31]

On March 15, 2019, Fidelity filed its Reply.[32] Its counsel, Boren, emailed Rusk a courtesy copy of the briefing.[33] Boren's email did not contain any body text or communication.[34] That same day, Rusk responded directly to Boren with a 3,373 word, substantive e-mail.[35] On March 19, 2019, Rusk filed a document styled "Plaintiff's Objection/Reply to Dkt 245" containing additional substantive responses to the Motion for Order to Show Cause.[36] On March 19, 2019, Judge Pead directed the parties to each provide a proposed memorandum decision and order in support of their position on the Order to Show Cause.[37] The next day, he stayed "[a]ll matters" in the case pending resolution of the Motion for Order to Show Cause.[38] Judge Pead then recused on March 28, 2019.[39] After a flurry of

---

[28] *Id.* at 1-2.

[29] *Id.* at 2-3.

[30] *Id.* at 3-4.

[31] Dkt. 240 at 2, Declaration of Zachary Rusk.

[32] Dkt. 245.

[33] Dkt. 246, Third Declaration of Jason Boren.

[34] *Id.*

[35] Dkt. 246-1.

[36] Dkt. 250. Rusk did not seek or receive leave to file Dkt. 250. *See* DUCivR 7-1(2)(C) (stating that aside from a motion, opposition, and reply, "[n]o additional memoranda will be considered without leave of court.").

[37] Dkt. 247.

[38] Dkt. 252.

additional filings from Rusk, including motions seeking to void the Order Limiting Contact[40] and to dissolve Judge Pead's Stay,[41] Judge Parrish also recused on April 19, 2019.[42] The case was thereafter reassigned to the undersigned.[43]

**DISCUSSION**

**1.      The Order Limiting Contact is Valid and Binding Upon Rusk.**

It is well-established that a district court has broad "power to manage its proceedings."[44] This includes the power to regulate the activities of abusive litigants.[45] District courts are well within their authority to issue orders limiting a litigant's conduct.[46] On multiple occasions, the Tenth Circuit has refused to tolerate harassment during the legal process and affirmed restrictions placed on pro se litigants.[47] Indeed, a litigant's right of access to the court "is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious."[48]

---

[39] Dkt. 257.

[40] Dkt. 261.

[41] Dkt. 260.

[42] Dkt. 262.

[43] Dkt. 263.

[44] *Sally Beauty Co. v. Beautyco, Inc.* 372 F.3d 1186, 1191 (10th Cir. 2004).

[45] *See Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010); *see also Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989); *see also* 28 U.S.C. § 1651(a) (allowing court to enjoin litigants who abuse the court system by harassing their opponents).

[46] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005); *see also Shell v. Swallow*, 671 Fed. Appx. 1028, 1031 (10th Cir. 2016); *Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978) ("This court simply will not allow liberal pleading rules and pro se practice to be a vehicle for abusive documents.")).

[47] *See, e.g.*, *Ysais*, 603 F.3d at 1180 (affirming filing restrictions on *pro se* litigant); *McMurray v. McCelmoore*, 445 Fed. Appx. 43, 45 (10th Cir. 2011); *Medical Supply Chain, Inc. v. Neoforma, Inc.*, 322 Fed. Appx. 630, 634 (10th Cir. 2009); *Gaiters v. City of Catoosa*, 226 Fed. Appx. 826, 829 (10th Cir. 2007).

[48] *McMurray*, 445 Fed. Appx. at 45 (*quoting Tripati*, 878 F.2d at 352).

In accord with these principles, three magistrate judges have over the course of this case entered orders appropriately restricting Rusk's activities. Central here is Judge Wells' Order Limiting Contact, in which Rusk was directed to communicate with opposing counsel only regarding "non-threatening, relevant matters involving this litigation" and "to limit contact to no more than three such communications per day."[49] This Order was necessitated by the hundreds of irrelevant and threatening emails that Rusk sent to Fidelity and its counsel.[50] The Order Limiting Contact states that any "[v]iolation of this order may result in sanctions."[51] Further, Rusk's obligation to comply with the Order Limiting Contact was affirmed by Judge Pead in the November 2018 Scheduling Order.[52]

Rusk nevertheless argues the Order Limiting Contact is somehow void because he (mistakenly) argues it was entered by Judge Warner, whom Rusk he later sued for alleged judicial misconduct in *Rusk v. Warner*, 2:16-cv-00976-RJC (D. Utah 2016).[53] Rusk argues Judge Warner has retaliated against him because he does not share Judge Warner's "religious beliefs or identity" and therefore the order carries "no weight or value."[54] This argument is unavailing.

First, it was Judge Wells—not Magistrate Judge Warner—who initially entered the Order Limiting Contact.[55] While Judge Warner handled Rusk's *in forma pauperis* application at the

---

[49] Dkt. 36 at 2.

[50] *Id.* at 1.

[51] *Id.* at 2.

[52] Dkt. 209 at 2.

[53] Dkt. 239 at 2.

[54] Dkt. *Id.* at 3.

[55] Dkt. 36.

outset of this case, he was only assigned to this case on May 23, 2016, after Judge Wells entered the Order Limiting Contact.[56] And, Rusk's claim that alleged "misconduct" somehow renders an Order Limiting Contact void is without merit. Rusk's case against Judge Warner was dismissed on grounds of judicial immunity[57] and the Tenth Circuit affirmed dismissal of Rusk's complaint, concluding that he "failed to present a nonfrivolous argument in support of the issue on appeal."[58]

Rusk has failed to persuade the court that the Order Limiting Contact should be rendered void. Accordingly, the Order is valid and binding upon Rusk.

## 2. Rusk Violated the Order Limiting Contact.

The April 15, 2016 Order Limiting Contact reasonably restricted both the number and nature of Rusk's communications.[59] Rusk was permitted to communicate three times, every day, concerning relevant matters.

However, over a twenty-three day period, from February 11, 2019 through March 5, 2019, Fidelity's counsel, Boren, received six hundred thirty-two (632) e-mails, averaging over twenty-seven (27) e-mails per day.[60] On a single day, Boren received seventy-eight (78) e-mails.[61] The sheer volume of Rusk's correspondence is a direct violation of the Order Limiting Contact.

---

[56] Dkt. 42.

[57] *See Rusk v. Warner*, 2017 U.S. Dist. LEXIS 217533, 2:16-cv-00976-RJC (D. Utah Feb. 28, 2017).

[58] *See Rusk v. Warner*, 693 Fed. Appx. 778, 779 (10th Cir. 2017); *cert denied by Rusk v. Warner*, No. 17-5295, 138 S. Ct. 243 (2017).

[59] Dkt. 36 at 2.

[60] Dkt. 245-1 at 2-3, "Second Declaration of Jason Boren".

[61] Dkt. *Id.* at 3, Emails received on March 4, 2019.

And the substance of Rusk's communications also violated the Order Limiting Contact. The barrage of email he sent can be generally be characterized as either irrelevant, personally insulting, contradictory, threatening, or some combination thereof.[62]

For example, on February 27, 2019, Rusk sent Boren an email with the subject "Double down payment at Murdock Chevrolet Logan," and simply attached a car advertisement offering "$13,000 Off A Brand New Chevy."[63] Rusk repeatedly insulted Boren's character as seen in emails referring to him as "retarded,"[64] "a prick,"[65] "not honest,"[66] and accusing him of "l[ying] and cheat[ing] and engag[ing] in gross wrongdoings."[67]

Most of Rusk's emails discuss settlement, but his offers are one-sided and intimidating in nature. For example, Rusk threatened that a failure to settle and pay him millions of dollars would result in retaliation against both Fidelity and Boren.[68] Rusk further threatened to block e-mails,[69] not participate in discovery,[70] "seek criminal referrals,"[71] and sue Boren personally[72] if Fidelity refused settlement pursuant to his exorbitant settlement demands.[73]

---

[62] Dkt. 235-1, "First Declaration of Jason Boren"; Dkt. 245-1.

[63] Dkt. 235-3.

[64] Dkt. 235-14.

[65] Dkt. 235-10.

[66] *Id.*

[67] *Id.*

[68] Dkt. 235-1, ¶14.

[69] Dkt. 235-4.

[70] Dkt. 235-5.

[71] Dkt. 235-6.

[72] Dkt. 235-7, Dkt. 235-8.

[73] Dkt. 235-1 at 4-5, Dkt. 235-9, Dkt. 235-10, Dkt. 235-11.

Finally, and by far most troubling, Rusk has repeatedly threatened physical violence against Boren and his family. Recently, Rusk aggressively threatened that "[r]evenge will be had. It may not be in court but it will be had in other ways. Guaranteed."[74] And, he indicated he had "[b]een searching murder for hire too."[75] Rusk informed Boren that he had a gun[76] and stated "I want so bad to make you all suffer! Someday I will. Promise."[77] Rusk has additionally threatened[78] to bring false criminal charges against Boren, stating that, "If I were you, I wouldn't want to eventually be taken away from my family and put away for decades . . . ."[79]

The volume and substance of Rusk's communications are a clear and direct violation of the Order Limiting Contact.[80] Rusk admits that his communications are an attempt to waste Fidelity's resources and extort a favorable settlement offer on grounds entirely unrelated to the merits of the case.[81] Moreover, the disturbing substance of the communications are unacceptable and anathema to our system of justice.[82]

---

[74] Dkt. 235-18.

[75] Dkt. 235-16.

[76] Dkt. 235-15.

[77] Dkt. 235-17.

[78] Dkt. 235-6, Dkt. 235-7, Dkt. 235-8, Dkt. 235-19, Dkt. 235-20.

[79] Dkt. 235-19.

[80] Dkt. 36 at 2.

[81] Dkt. 235-11.

[82] *See, e.g., Petito v. Brewster*, 562 F.3d 761, 762-63 (5th Cir. 2009) (plaintiff ignored court orders, used vulgarities in referring to judicial officers, and sent threatening e-mails to opposing counsel); *Stearman v. Comm'r*, 436 F.3d 533, 537 (5th Cir. 2006) (plaintiff refused to obey court orders and accused judge and opposing counsel of engaging in criminal conduct); *Castillo v. St. Paul Fire & Marine Ins. Co.*, 938 F.2d 776, 779-80 (7th Cir. 1991) (plaintiff threatened violence in deposition)).

### 3. Rusk Violated the March 5, 2019 Order.

On March 5, 2019, Judge Pead ordered that Rusk "have no contact, direct or indirect, with attorney Jason Boren, until after the pending Order to Show Cause is resolved."[83] Judge Pead warned that "failure to abide by this Order, requiring Rusk to cease contact, will result in immediate and potentially dispositive sanctions."[84] On March 15, 2019, Rusk sent Boren a substantive e-mail containing 3,373 words.[85] Rusk's claim that "[s]ince [Boren] reached out to me, I have the right to respond . . ."[86] is unpersuasive. Concerned about the increasingly threatening and violent nature of Rusk's communications, Judge Pead's March Order unequivocally prohibited Rusk from any contact, direct or indirect, with Boren.[87] As a result, Rusk's March 15, 2019, email is a clear violation of the court's March Order.

### 4. Dismissal with Prejudice is an Appropriate Sanction.

The district court has the inherent authority to issue appropriate sanctions when a litigant refuses to comply with its orders.[88] "District judges have the inherent authority to impose sanctions—including dismissal—when a litigant engages in conduct that abuses the judicial process."[89] Additionally, both the Federal Rules of Civil Procedure and the Local Rules for the

---

[83] Dkt. 237.

[84] *Id.*

[85] Dkt. 246, Dkt. 246-1.

[86] Dkt. 246-1 at 2.

[87] Dkt. 237.

[88] *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n.*, 886 F.3d 852, 857–58, (10th Cir. 2018) (affirming district court that issued sanction of dismissal of counterclaims with prejudice under district court's inherent authority and Fed. R. Civ. P. 41(b)).

[89] *White v. Williams*, 423 Fed. App'x. 645, 646 (7th Cir. 2011) (*citing Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991)).

District of Utah supply the court with authority to issue sanctions, including dismissal, for failure to comply with orders.[90]

Rule 41(b) allows for dismissal of an action if "the plaintiff fails to prosecute or comply with . . . a court order."[91] In *Ehrenhaus v. Reynolds,*[92] the Tenth Circuit articulated various criteria trial courts "should ordinarily"[93] consider when determining whether to dismiss an action pursuant to sanctions under Rule 37. The Tenth Circuit has also applied these considerations where the district court dismissed counterclaims pursuant to Rule 41(b) and the court's inherent powers.[94] The *Ehrenhaus* criteria include:

> (1) the degree of actual prejudice to the defendant caused by the misconduct;
> (2) the amount of interference with the judicial process; (3) the culpability
> of the litigant; (4) whether the court warned the litigant in advance that
> dismissal of the action would be a likely sanction for noncompliance; and
> (5) the efficacy of lesser sanctions.[95]

The court will now evaluate each of the *Ehrenhaus* factors in turn.

---

[90] *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails . . . to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."); DUCivR 1-2 ("The court, on its own initiative, may impose sanctions for violation of these civil rules. Sanctions may include, but are not limited to, the assessment of costs, attorneys' fees, fines, or any combination of these, against an attorney or a party.").

[91] Fed. R. Civ. P. 41(b).

[92] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[93] *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994) (*quoting Ehrenhaus,* 965 F.2d at 921).

[94] *Auto-Owners Ins.*, 886 F.3d at 859–60.

[95] *Ehrenhaus*, 965 F.2d at 921; *see King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018) ("non-exhaustive list of factors helps guide the determination of whether dismissal is an appropriate sanction.") (citation and quotation omitted)).

### a. Degree of Prejudice.

"The more the misconduct prejudiced the opposing party, the more appropriate dismissal becomes as a sanction."[96] Mounting attorneys' fees and delays constitute an identifiable form of prejudice.[97]

Fidelity has incurred substantial attorneys' fees and significant delays as a result of Rusk's voluminous communications sent in contravention of the Order Limiting Contact.[98] The degree of prejudice is heightened given Rusk's assertion that his conduct is purposeful, and designed to waste time[99] and ensure that Fidelity will pay him a settlement in order to "save money and make this go away."[100] Fidelity is also prejudiced by the impact Rusk's communications have had on its counsel of choice—Boren. Rusk has threatened Boren, causing him to fear for his safety and the safety of his family, resulting in the filing of a police report with the Salt Lake City Police Department.[101]

### b. Amount of Interference.

The second *Ehrenhaus* factor examines interference with the judicial process. In failing to comply with rules and court orders, a party directly interferes with the judicial process.[102]

---

[96] *King*, 899 F.3d at 1151.

[97] *See Ehrenhaus*, 965 F.2d at 921 (10th Cir. 1992); *see also Faircloth v. Hickenlooper*, 2018 U.S. App. LEXIS 36450 at * 6, --- Fed. Appx. --- (10th Cir. Dec. 26, 2018) ("[W]e have recognized prejudice from 'delay and mounting attorney's fees.'") (*quoting Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)).

[98] Dkt. 235-1 at 8.

[99] Dkt. 235-11.

[100] Dkt. 235-10.

[101] Dkt. 231 at 7.

[102] *See Whatcott v. City of Provo,* 231 F.R.D. 627, 631 (D. Utah 2006), *affd,* 171 F. App'x 733 (10th Cir. 2006) (unpublished); *see also Valdez v. Salt Lake City Police Dep't.,* 2015 WL 1731410, at *2 (D. Utah Apr. 14, 2015) (unpublished)).

13

"Greater degrees of obstruction help justify a dismissal sanction."[103] Courts have found significant interference with the judicial process where parties and the court are forced to devote valuable resources responding to a litigant's improper conduct.[104]

Rusk's conduct has substantially interfered with the judicial process for two main reasons: 1) the sheer volume of his communications, and 2) the substantive content of the e-mails. First, Rusk sent Boren six hundred thirty-two (632) e-mails over a twenty-three day period, averaging over twenty-seven e-mails per day.[105] This is not a discrete violation of the court's order limiting Rusk to three e-mails per day.[106] Fidelity has expended significant time and resources reviewing and responding to these e-mails.[107] Second, the substance of the e-mails containing threats of murder,[108] physical violence,[109] revenge,[110] personal lawsuit, criminal charges,[111] and implicating the safety of counsel's family[112] amount to a significant and flagrant violation of the court's order.

---

[103] *King*, 899 at 1151 (10th Cir. 2018).

[104] *Id.* at 1152; *see also Jones*, 996 F.2d at 265 (10th Cir. 1993) (sanction of dismissal appropriate where litigant "ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party.")).

[105] Dkt. 245-1 at 3.

[106] Dkt. 36 at 2.

[107] Dkt. 235-1 at 8.

[108] Dkt. 235-16.

[109] Dkt. 235-15.

[110] Dkt. 235-18.

[111] Dkt. 235-6, Dkt. 235-7, Dkt. 235-8, Dkt. 235-19, Dkt. 235-20.

[112] Dkt. 235-19.

### c. Culpability of Litigant.

The third *Ehrenhaus* factor turns on whether the conduct at issue was within a litigant's control and if it amounted to "willful and intentional disobedience."[113] "[T]he greater the culpability, the more appropriate a dismissal sanction becomes."[114]

Rusk's decision to send hundreds of e-mails to Boren is well within his control. Rusk contends, however, that he did not willfully violate the court's orders because he recently experienced changes in his medication.[115] Rusk explains that his new medication increased certain manic episodes, but that he discontinued the medication on March 5, 2019.[116] Yet, the very same day he discontinued his medication, and only one day after Fidelity filed its Motion for Order to Show Cause, Rusk stated "because I have discontinued the Zoloft, I have realized the seriousness of my actions."[117]

It is within the discretion of the court to consider whether Rusk suffers a condition that excuses his failures to comply with court orders.[118] Here, Rusk has neither produced any medical records or declarations from licensed medical professionals supporting his claims, nor

---

[113] *Ehrenhaus*, 965 F.2d at 921 (10th Cir. 1992).

[114] *King*, at 1152 (10th Cir. 2018).

[115] Dkt. 239 at 3-4; Dkt. 240.

[116] Dkt. 240 at 2.

[117] Dkt. 240 at 2.

[118] *See Faircloth v. Hickenlooper*, 2018 U.S. App. LEXIS 36450 at * 7, --- Fed. Appx. --- (10th Cir. Dec. 26, 2018); *see also White v. Williams*, 423 Fed. Appx. 645, 647 (7th Cir. 2011); *Smith v. McKune*, 345 Fed. App'x 317, 319-20 (10th Cir. 2009) (district court acted within its discretion in dismissing suit when plaintiff blamed a mental illness for his failure to appear for a deposition); *Marshall v. Milyard*, 2011 U.S. Dist. LEXIS 71866 at **1-4, (D. Colo. July 5, 2011) (rejecting plaintiff's contentions that his mental illness and homelessness excused his failure to comply with court order and dismissing case)).

15

provided a sufficient record for the court to evaluate the seriousness of any condition or its relationship to the conduct at issue.

Moreover, the content of Rusk's emails show an awareness and intent that mental illness cannot excuse. In several e-mails, Rusk apprehends the nature of his behavior claiming that harassment is "fun" and litigation is simply a "game."[119] He characterizes his e-mails to Boren as "a fun enjoyable little outlet"[120] and "just a nice therapeutic outlet,"[121] asserting that it "[w]ould be nice to have something to do or at least be able to get a new hobby eventually as opposed to writing you emails all day."[122] Further, Rusk shows an intent to "tick ya off,"[123] "play games,"[124] "rack up more bills for them that they'll never get paid for,"[125] "waste your time,"[126] and "chang[e] their behavior through being forced to do why [sic] they don't want to."[127] He described it as "amusing" and an "ego boost" when his former attorney perceived him as threatening.[128]

Additionally, Rusk has a proven history of abusing the legal system. He has filed at least fourteen unsuccessful district court cases against various defendants since late 2015.[129] Rusk

---

[119] Dkt. 245-1 at 2-6.

[120] Dkt. 245-3.

[121] Dkt. 235-19.

[122] Dkt. 245-2.

[123] Dkt. 245-7.

[124] Dkt. 245-6.

[125] Dkt. 245-5.

[126] Dkt. 235-11.

[127] Dkt. 245-3.

[128] Dkt. 245-3, Dkt. 235-19; Dkt. 245-9.

[129] Dkt. 245-1 at 7-8.

has filed at least fourteen separate appeals since 2016.[130] And when his cases fail, Rusk does not hesitate to sue his attorneys as well as the federal and state court judges who rule against him.[131] Indeed, Boren is not the only attorney to be barraged with threatening e-mails. Rusk has sent attorney Kirk Cullimore e-mails "for years now" and threatened to "hack" his former attorney in this case, Michael Hepworth.[132]

Because Rusk has engaged in a pattern of abusive litigation conduct for years, his violations of the court's Order Limiting Contact cannot be excused by his recent medication changes.

### d. Warnings to Litigant.

Rusk was warned several times that any violation of the Order Limiting Contact could result in dispositive sanctions. The Order itself states that "[v]iolation of the order may result in sanctions."[133] Further, in its November 2018 Scheduling Order, the court again ordered Rusk to comply with the Order Limiting Contact.[134]

Judge Pead's March 5, 2019 Order specifically states that Rusk is to "have no contact" and "[a]ny failure to abide by this Order . . . will result in immediate and potentially dispositive sanctions."[135] And on at least two recent occasions, Fidelity's counsel reminded Rusk about the

---

[130] *Id.*

[131] *See e.g., Rusk v. Strindberg & Scholnick,* 20161014-CA (Utah Ct. App. 2016); *Rusk v. Warner*, 2:16-cv-00976-RJC (D. Utah 2016); *Rusk v. Brereton*, 1:17-cv-00148-TC (D. Utah 2017); *Rusk v. Tymkovich*, 1:17-cv-00156-TS (D. Utah 2017).

[132] Dkt. 245-11.

[133] Dkt. 36 at 2.

[134] Dkt. 209 at 2.

[135] Dkt. 237.

17

order and requested his compliance.[136] Rusk, however, refused to do so.[137] Finally, Fidelity's Motion for Order to Show Cause sought dismissal as a sanction, and was served upon Rusk.[138]

Despite these repeated warnings, knowledge of the Order and the potential for sanctions, Rusk willfully violated the Order Limiting Contact. Furthermore, Rusk's March 15, 2019 e-mail to Boren was sent after he was explicitly warned that any failure to abide by the March 5, 2019 Order would result in potentially dispositive sanctions.

### e. Efficacy of Lesser Sanctions.

Dismissal is undoubtedly a severe sanction. Yet it is warranted where lesser sanctions would prove ineffective. "Dismissing a case with prejudice serves at least two purposes. It penalizes the party whose conduct warrants the sanction and discourages those who might be tempted to such conduct in the absence of such a deterrent."[139] When considering the efficacy of lesser sanctions, courts analyze a litigants' history of conduct to determine whether there is a proclivity to continue abusive behavior.[140] Courts also consider a party's repeated refusal to comply with court orders when affirming dismissal of cases.[141]

---

[136] Dkt. 235-19; Dkt. 245-9.

[137] *Id.*

[138] Dkt. 235 at 8, *see King*, 899 F.3d at 1153 (holding that providing notice of a motion that sought dismissal as a sanction was sufficient notice for purposes of the "five-factor-dismissal-as-a-sanction test").

[139] *King*, 899 F.3d at 1153 (quoting *Jones*, 996 F.2d at 266).

[140] *See King*, 899 F.3d at 1153.

[141] *See Jones*, 996 F.2d at 265-66.

Given Rusk's inability to pay attorneys' fees and his own statement that he is unable to pay a judgment, monetary sanctions would be ineffective.[142] Further, Rusk's emails demonstrate not only an inability, but an unwillingness to pay:

> There is no justice here but that does t [*sic*] mean I'm done fighting. I'm just going to start fighting in more and different ways now. I don't see a judge giving you attorneys fees or anyone else that and even if they did I'd declare bk again in 7-10 years. Thanks![143]

As a result, any financial sanctions issued against him would likely be ineffective.

Rusk suggests that the court should deny his Motion to Reinstate Motion to Compel[144] and Second Motion to Reinstate Motion to Compel[145] "in exchange for also denying" Fidelity's Motion for Order to Show Cause.[146] While Rusk appears to believe that this would be a fair compromise, denying the motions to compel is not the "harsh penalty" Rusk contends it is.[147] In fact, such arrangement would be ineffective as a sanction since there is no penalty to Rusk and nothing to prevent him from refiling another motion to compel or reissuing additional discovery. Furthermore, his proposed compromise would do nothing to ameliorate the prejudice caused to Fidelity and Attorney Boren as a result of Rusk's violations of court orders.[148]

---

[142] Dkt. 235 at 4.

[143] Dkt. 245-10.

[144] Dkt. 225.

[145] Dkt. 233.

[146] Dkt. 254 at 5-6.

[147] Dkt. 254 at 5.

[148] On March 20, 2019, Judge Pead ordered that "[a]ll matters are hereby stayed pending resolution of Defendant's Order to Show Cause." Dkt. 252. On March 25, 2019, Rusk filed a Motion to Expedite, asking for discovery to be completed by May 1, 2019 and trial to start no later than June 1, 2019. *See* Dkt. 255. He has made several other filings since then as well.

Accordingly, after consideration of all the relevant factors, and based upon Rusk's continued and significant violations of the Order Limiting Contact, the court finds dismissal of Plaintiff's action is an appropriate sanction.

**CONCLUSION & ORDER**

The April 15, 2016, Order Limiting Contact[149] is valid and binding upon Rusk. Rusk's e-mails to Boren between February 11 and March 5, 2019 constitute multiple serious violations of the Order. In addition, Rusk violated Judge Pead's March 5, 2019 Order[150] when he sent Attorney Boren a substantive communication on March 15, 2019.

After consideration of all the relevant factors, due to the extreme and pervasive nature of Rusk's conduct and the fact that lesser sanctions are likely to be, and have been, ineffective, the court hereby DISMISSES WITH PREJUDICE Rusk's Third Amended Complaint[151] pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and this court's inherent authority.

All remaining motions in this action are therefore DENIED AS MOOT.

The Clerk of Court is directed to close this case.

DATED this 30th day of April, 2019.

BY THE COURT

_____
Robert J. Shelby
Chief District Court Judge

---

[149] Dkt. 36.

[150] Dkt. 237.

[151] Dkt. 165.