Zach Rusk
1010 N 100 W PO Box 352
Newton, Utah 84327
435.265.6991
zachrusk5@gmail.com

FILED
U.S. DISTRICT COURT
2019 OCT 23 P 12:06
DISTRICT OF UTAH
BY: ____________
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| | * | |
| ZACHARY RUSK, | * | **Case Number 2:15-CV-00853-RJS** |
| | * | District Judge Robert Shelby |
| **vs.** | | |
| | * | |
| FIDELITY BROKERAGE SERVICES, LLC | * | Rule 60 Motion |
| | * | |

INTRODUCTION

Plaintiff hereby submitted this Rule 60 motion to set aside judgment and reinstate case through the Court Ruling on Plaintiff's motion for Summary Judgment forthwith.

BACKGROUND

This suit was brought by a former employee (hereinafter referred to as "Mr. Rusk" or "Rusk" or "Plaintiff") of Fidelity Brokerage Services, LLC ("Fidelity"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101, et seq.; the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615 and 2617; 42 U.S.C. § 1981 ("§1981"); and through the Court's pendent jurisdiction for claims arising from Mr. Rusk's employment at Fidelity. Plaintiff contends that Fidelity and its agents discriminated against Plaintiff in the terms of his employment. Then, Fidelity fired Plaintiff in violation of the Title VII and the ADEA. After terminating his employment, Fidelity's agents published defamatory statements about Plaintiff which prevented him from obtaining employment in the financial industry.

ARGUMENT AND LEGAL STANDARDS

Absent information protected by the attorney-client privilege or work-product doctrine, the rules of civil procedure require full disclosure during discovery; yet providing an opposing party with information that might harm the client's case seems to conflict with zealous advocacy. Throw in dishonest behavior by an officer of the court, however, a strong argument begins to unfold that a fraud on the court may be in the works.

Indeed, the most harmful form of discovery abuse is likely in the form of attorney deceit. No one can dispute the discovery system is designed to facilitate truth-finding. Yet, deception during discovery is all too common. One reason for attorney misconduct is the tension inherent in the discovery process. This quandary appears to be a true Catch-22 from which there is no escape. Thus, when these mutually conflicting situations arise, the natural tendency for many lawyers is to resist the disclosure of client information or consciously deceive the opposing party in order to gain a tactical advantage.

A lawyer who seeks excessive discovery given what is at stake in the litigation, or who makes boilerplate objections to discovery requests without particularizing their basis, or who is evasive or incomplete in responding to discovery, or pursues discovery in order to make the cost for his or her adversary so great that the case settles to avoid the transaction costs, or who delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is . . . hindering the adjudication process, and . . . violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve.

Rule 26(g) of the Federal Rules of Civil Procedure states —"[o]ne of the most important, but apparently least understood or followed, of the discovery rules" — clearly and expressly requires that "every discovery request, response, or objection be signed by at least one attorney of record, . . . or by the [client], if unrepresented." The signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the discovery is complete and correct, and that the discovery request, response, or objection is (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

If a lawyer or party makes the certification required by Rule 26(g) that violates the rule, the court "must" impose an appropriate sanction, which may include an order to pay reasonable expenses and attorney's fees caused by the violation. The Advisory Committee's Notes to Rule 26(g) provide further guidance: Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition

of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certifica- tion requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. . . . If the primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. With this in mind, Rule 26(g), which paral- lels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection. . . . Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legiti- mate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection. The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. FED. R. CIV. P. 26(g) advisory committee's notes to the 1983 amendments (emphasis added) (citations omitted).

In Powell v. Alabama, the Supreme Court wrote, Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to pre- pare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceeding against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

In situations where attorney misconduct like that discussed above leads to a favorable judgment, Rule 60(d)(3) should serve as a wide-open door that victims must be able to enter unhindered. One of the major problems associated with attorney abandonment is the difficultly in reversing the wrongdoing, especially if the party is faced with an adverse judgment. Abandonment has been defined in very strict terms and requires a high bar before a party may gain relief from judgment due to its own counsel's inadequacy.

Though not a discovery-abuse case, in Maples v. Thomas the United States Supreme Court recently held that a "habeas prisoner's default" would be excused when the filing deadline was missed due to his attorneys' abandonment because "a client cannot be charged with the acts or omissions of an attorney who has abandoned him.

Our civil process before and during trial, in state and federal courts, is a masterpiece of complexity that dazzles in its details—in discovery, in the use of experts, in the preparation and presentation of evidence, in the selection of the factfinder and the choreography of the trial. But few litigants or courts can afford it. Consequently, in addition to facing the aggressive lawyer, the misguided and naïve litigant is likely to encounter an opposing party who refuses to play by the rules because it knows (1) the chances of being caught, sanctioned, or challenged are relatively small and (2) the probability of prevailing in the lawsuit is significantly greater if the rules are

not observed. The skilled lawyer, knowing that his opponent is not qualified, is thus encouraged to engage in improper or unsound litigation tactics.

Rule 60(d)(3) was added in 1948. The framers' intention may best be indicated in the Advisory's Committee's discussion of the rule: The amendment . . . mak[es] fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a ground for relief by independent action insofar as established doctrine permits. And the rule expressly does not limit the power of the court . . . to give relief under the savings clause. As an illustration of the situation, see Hazel-Atlas Glass Co. v. Hartford Empire Co. [322 U.S. 238 (1944)]

The Supreme Court, in an opinion authored by Justice Black, held that the judgment must be vacated. [T]he general rule [is] that [federal courts will] not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. . . . [but]...[e]very element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. Furthermore, tampering with the administration of justice in the manner indisputably shown in the afore noted case involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

The Tenth Circuit has held that it is fraud "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents . . . . It is thus fraud where . . . the impartial functions of the court have been directly corrupted."

In the Third Circuit, fraud on the court applies to only "the most egregious misconduct directed to the court itself" and requires the following elements: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."

Furthermore, fraud on the court under Rule 60(d)(3) does not encompass "ordinary fraud," and must also be distinguished from "fraud" under Rule 60(b)(3)—i.e., those frauds which are not directed to the judicial machinery itself.

An attorney is an officer of the court and owes the court fiduciary duties and loyalty. Accordingly, "[w]hen an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court."

Furthermore, when an officer of the court fails to correct a misrepresentation or retract false evidence submitted to court, it may also constitute fraud on the court.

Notwithstanding, examination of the offender and his duty is not limited solely to an attorney's duty of candor toward the tribunal. Rather, the analysis requires courts to examine certain duties that arise well before the offender involves the court.

Rule 3.3 provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. In addition to the rules of professional conduct and an attorney's duty of candor as an officer of the court, "Rule 11 [of the F.R.C.P.] imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have de- termined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."197 The United States Supreme Court has held that Rule 11, imposes on any party who signs a pleading, motion, or other paper—whether the party's signature is required by the Rule or is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances.

In Kupferman v. Consolidated Research & Manufacturing Corp, the court stated that [w]hile an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court." And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court.

## STATEMENT OF FACTS

The court must consider the victim in this case. It should note that all Micheal Hepworth had to do was not withdrawal the motion to compel that Plaintiff had filed on the record, which was fully briefed. As it stated in the motion to compel, the result could have yielded the defense not being able to supply evidence because they did not maintain it for purposes benefiting of itself in non-compliance with discovery requirements and thus default judgment against the defendant could have been likely. Furthermore, Michael Hepworth, in his motion to withdraw, wrongfully implied that Plaintiff may have been engaged in unlawful activities as to the reason for which he feels he must withdrawal. This occurred after plaintiff wrote an email (which was supplied to the court as an exhibit) asking his attorney Michael Hepworth to withdrawal because Michael withdrew the fully briefed motion to compel, asked the plaintiff to text him to his personal cell phone, and when plaintiff texted Michael to his personal cell phone as requested and inquiring if Michael read the motion to compel before withdrawing it, Michael texted back stating no he did not read it at all. Furthermore, Michael originally required the plaintiff to sign an agreement to not sue him for any malpractice in exchange for representation, which Michael withdrew upon Plaintiff stating that such would be against public policy. While Plaintiff should be entitled to an attourney in this case under Title VII, the evidence (emails) stayed in the Rusk v. Tymkovich

appeal as to Judge Paul Warner's inflammatory statements on the record, showed that the Court, through judicial interference, deterred any other attourneys from wanting to assist Plaintiff in this ligation.

CONCLUSION

The fraud-on-the-court rule should be characterized by flexibility and an ability to meet new situations demanding equitable intervention court clearly considered and accepted the inequities of this case, as it one cannot ignore the apparent injustice plaintiff has suffered throughout this matter. Mr Rusk [was] responsible for the dismissal of the case without the merits of the case even being addressed. In other words, it is significant that plaintiffs attorney had abandoned him, and this certainly influenced, at least in part, the reason for the communications at issue to have commenced after the lack of zealous advocacy, as while Plaintiff believed he was being zealously represented, the communications at issue ceased to exist.

REQUEST FOR RELEIF

Plaintiff respectfully requests that the Court set aside Judgement and reinstate this case by Ruling on Plaintiff motion for Summary Judgement forthwith.

Dated: October 21st, 2019.

Respectfully submitted,

Zachary Rusk, pro se

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE®

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID
$7.35
Origin: 84341
10/22/19
4950670213-09

PRIORITY MAIL 1-DAY ®

0 Lb 2.80 Oz
1005

EXPECTED DELIVERY DAY: 10/23/19

C002

SHIP
TO:
351 S WEST TEMPLE
STE 1-100
SALT LAKE CITY UT 84101-1948

USPS TRACKING NUMBER

9505 5130 0627 9295 5449 53

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PRIORITY® ★ MAIL ★

UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Zach Rusk
P.O. Box 352
Newton UT 84327

TO: U.S. Dt. Ct. UT.
Clerks office Rm. 1.100
351 South West Tmpl
SLC UT 84101

Label 228, March 2016 FOR DOMESTIC AND INTERNATIONAL USE

* Domestic only. ✕ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.